EL PASO & SOUTHWESTERN RAILROAD COMPANY V. KATE MURTLE
ET AL.

Decided February 19, 1908.

**1.—Railroads—Failure to Stop at Crossing—Negligence—Evidence.**

In a suit for damages for the death of a railroad employee caused by the collision of trains at a railroad crossing, evidence considered, and held to show a flagrant violation of the statute, the rules of the defendant company and of common prudence.

**2.—Same—Statute Construed—Negligence per se.**

The provisions of our statute (article 4507) requiring that each locomotive engine approaching a place where two lines of railway cross each other

shall, before reaching such crossing, be brought to a full stop, have application to such crossings in railroad yards where switch engines are operated, as well as all other places, and the habitual disregard of the statute in such places does not repeal it. The violation of the statute is negligence per se.

### 3.—Negligence—Presumption Against.

The employees of one railroad having the right of way over the crossing of another road, have the right to presume that the employees of such road will perform their duty in observing the requirements of the law, and hence cannot be charged with contributory negligence in acting on such presumption.

### 4.—Engine—Construction—Negligence.

Whether or not the use of an engine, for switching purposes, equipped with a square instead of a sloping tank was negligence, held, under the facts of this case, to have been a question of fact and properly submitted to the jury.

### 5.—Attorney's Fee—Judgment for—Error.

A judgment which in the absence of pleading or evidence or verdict to support it awards to the attorneys for the plaintiffs a part of the amount of the verdict, is fundamental error. Especially where the interests of minors are involved.

### 6.—New Trial—Impeaching Testimony.

It is not the practice to grant new trials for the purpose merely to impeach a witness.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Patterson, Buckler. & Woodson,* for appellant.—Inasmuch as the evidence conclusively showed that Murtle and those on the front car with him saw the approach of the engine on appellant's track before starting their train over the crossing, the failure of appellant to have a switchman upon the footboard, or to ring the bell and sound the whistle, or to give any other signal of the approach of their train, could not have been the proximate cause of plaintiff's injury; and the court should not have submitted these matters to the jury for their determination as to whether or not such failure on the part of the appellant was the proximate cause of the injury, as there was no causal connection between the death of Murtle and the failure of appellant's servants to give notice of the approach of their train. San Antonio & A. P. Ry. v. Gray, 95 Texas, 424; Dupuy v. Burkitt, 78 Texas, 340; Denison & S. Ry. v. Carter, 98 Texas, 196; St. Louis S. W. Ry. v. Arnold, 87 S. W. Rep., 176; Hutchinson v. Missouri Pac. Ry. (Mo.), 93 S. W., 931; Carpenter v. Chicago, R. I. & P. Ry. (Io.), 101 N. W., 759; Lambert v. Southern Pac. Ry., 79 Pac., 873; McManamee v. Missouri Pac. Ry. (Mo.), 37 S. W., 119.

Rule 325 being only collaterally in evidence for the purpose of showing negligence on the part of defendant and the absence of contributory negligence on the part of deceased, the court should have left the construction of said rule for the jury. The court should not have construed said rule for the reason that the word "train" as used therein has a peculiar meaning in the business of railroading, and the construction of said rule was, for this reason, for the jury.

Hoover v. Texas & P. Ry. Co., 61 Texas, 505; Galveston, H. & S. A. Ry. v. LeGierse, 51 Texas, 189; Sayles' Stat., art. 3268; Taylor v. McNutt, 58 Texas, 73; Dwyer v. Brenham, 70 Texas, 30; International & G. N. Ry. v. Gray, 65 Texas, 32; Houston & T. C. Ry. v. Fanning, 91 S. W., 344; 11 Am. & Eng. Ency. Pl. & Pr., p. 80 (subd. 2); 1 Green Ev., sec. 280; 1 Elliott Ev., secs. 577 and 608; 17 Cyc., p. 636; Mooney v. Howard Ins. Co., 52 Am. Rep., 277; Dixon v. Central of Ga. Ry., 35 S. E., 369; Fonda v. St. Paul City Ry., 74 N. W., 166; Gulf, C. & S. F. Ry. v. Grubbs, 7 Texas Civ. App., 53; Swanson v. Melton, 17 S. W., 1088; Medlin v. Wilkins, 60 Texas, 415.

The court in its general charge erred in submitting to the jury as a question for their decision whether deceased, Murtle, saw the approach of defendant's engine and cars, or could by the exercise of ordinary care on his part have seen same in time to have stopped his cars; as the entire evidence showed that he did see the approach of defendant's engine and cars while his train was standing still, three or four car lengths from the crossing; and the submission to the jury of the question of his seeing the approaching engine and cars, in time to have stopped his own train was the submission of an issue not made by any evidence in the case.    Western U. Tel. Co. v. Kendzora, 77 Texas, 257; Wooters v. Kaufman, 73 Texas, 395; Texas & Pac. Ry. Co. v. McCoy, 31 S. W., 304; 11 Am. & Eng. Pl. & Pr., p. 170.

*Patterson & Wallace,* for appellees.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages occasioned by the death of Robert Murtle, instituted by Mrs. Kate Murtle, his widow, Mrs. S. J. Murtle, his mother, and William Murtle, Bessie Murtle and Richard Murtle, his children, against appellant. The defenses were assumed risk and contributory negligence.    A trial by jury resulted in a verdict and judgment for $15,000, the sum of $7,000 being allotted to the widow, Kate Murtle; $500 to the mother, S. J. Murtle; $3,000 to Bessie Murtle; $2,500 to Richard Murtle; and $2,000 to William Murtle.

A train of the Texas & Pacific Railway Company, in charge of Robert Murtle, yardmaster, and other employes of that company, was being carried from the yards of the company to yards of the Galveston, Harrisburg & San Antonio Railway Company, over a transfer track belonging to the former company, and in making the trip a track of appellant had to be crossed.    When within two or three car lengths of the crossing the train, which was being backed, was stopped and the usual blasts of the whistle given.    Robert Murtle and two others, with lighted lanterns, were riding on the rear car, nearest to the crossing, and after the train had come to a full stop and had sounded the whistle, the backup signal was given by Murtle and the train was slowly backed on the crossing, and when the rear car was on the crossing an engine of appellant ran violently into it, the car was overturned and Robert Murtle was killed.    When the train stopped at the crossing the engine of appellant, that caused

the accident, was on its track 629 feet from the crossing and started towards the crossing about the time the train began backing towards the crossing. The accident occurred about 9 o'clock at night. Although it was the duty of appellant to have a man on the front of its engine to keep a lookout, none was there on the night of the accident, and the tank on the engine was so high that the engineer could not see the train on the crossing until within ten or twenty feet of it, according to his testimony, although the headlight lighted the track for a distance of five or six car lengths. The train of the Texas & Pacific Railway Company having reached the crossing first, under the rules of the companies, had the right of way over the crossing. It was the duty of the employes of appellant, under its rules, to give preference on the crossing to the train on which Robert Murtle was riding when he was killed. Appellant's engineer swore that the Texas & Pacific train, under the rule, had the right to the crossing, having reached it first. Appellant's engine was not stopped and gave no signal at or near the crossing.

It follows from our conclusions of fact that the court did not err in refusing to instruct a verdict for appellant. The case was one for a jury, and it would have been gross error to have withdrawn it from the jury. The employes of the Texas & Pacific Railway Company may have seen the engine of appellant approaching, but they had, as prudent men, the right to presume that those in charge of the engine would not disobey the rules and the statute law of Texas, but would bring the engine to a stop and give the train time to pass. It was no defense to the action to say that the employes habitually disobeyed the rules and the law and never stopped at crossings. The employes on the wrecked train evidently did not know of the customary criminal negligence of appellant's servants and acted, as they had the right to act, on the hypothesis that those employes would not recklessly run their engine into a train of cars on a crossing. The engineer should have seen the train and was grossly negligent if he did not. He was signaled to stop but he did not stop. One of the employes of the Texas & Pacific Railway Company, Fred Barker, testified: "They had apparently seen us because they gave a very violent signal to stop." The witness also stated: "I had every reason to believe that they were going to stop." That conclusion was founded on reason and common sense, although it brought the train to grief and caused Murtle's death in this instance. It is strenuously argued that the employes on the demolished cars must have seen the engine, and it can with the same propriety be maintained that the employes of appellant saw the rear car on top of which were three lanterns. The difference is that when the employes on the car saw the approaching locomotive they could reasonably presume that it would stop, while the employes on the engine could reasonably presume nothing but that the train, which had started across, would continue to go until it crossed, and that they would collide with it unless they stopped. They must have known that the train could not clear the crossing before they reached it, if they knew it was on the crossing, and not to have known it was there was negligence of a flagrant character.

There was an allegation that it was the duty of appellant to have a person on the footboard of the tender of the engine, switching in the yards, to give warnings to the engineer, the evidence sustained the allegation, and the court did not err in submitting the issue to the jury.

It may be true that Murtle and others on the train saw the approach of the engine of appellant, still they were justified in acting on the theory that it would not collide with their train, and if the employes had decided not to give the right of way to the train, they should in some way have conveyed that information to the train employes, by some sort of warning or signal. That was what the court required of them when a recovery was authorized "if those in charge of the defendant's engine and cars failed to give signals of their approach and intention to pass across said link track to notify those in charge of said Texas & Pacific transfer of their approach and intention to cross." Appellant in its brief seeks to disconnect the two ideas conveyed by the charge and makes its argument on the premise that the court instructed the jury merely on an issue of failure to notify of the approach of the engine. The court couples notification of the approach with notice of intention to cross.

It was provided in rule 325 of appellant: "When two trains of the same class approach a crossing at the same time, the one nearest the crossing shall be given preference," and the court instructed the jury that if the Texas & Pacific train arrived first nearest the crossing and stopped and blew two signals for the crossing and was nearer to the crossing than the engine of appellant, that under the rule quoted the Texas & Pacific train had the right to use the crossing first, subject to the exercise of ordinary care. That is undoubtedly the only reasonable construction that can be placed upon that rule. There is nothing technical about the language used. The trains in this instance were being propelled, in the yards, by switch engines and were of the same class. Still, witnesses testified that a locomotive and nine or ten or more cars was not a train within the contemplation of the rule unless there were "markers" on them. "Markers," it seems, would turn an engine into a train. It seems, therefore, to be the contention of appellant that at such points as the one at which the collision took place no unmarked train had the precedence over the other by reason of reaching the crossing first. If that be true, there is no cause to be surprised at a wreck, but the surprise would be that they did not occur every day. Reason and common sense, outside of any written rule, would call for the observance of such a rule in order to prevent accidents which would certainly occur if trains were allowed to race for crossings.

If it be conceded that the court should have left the construction of the rule to the jury, under the evidence, we do not think that any injury could have resulted to appellant by the charge of the court construing the rule. The Texas & Pacific train was on the crossing, and whether it had the preference over the train of appellant by reaching the crossing first or not, no other train had the right to run into and knock the cars off the track. It made no

difference whatever, then, about which train had the preference over the other; one of them was on the crossing, and being there was entitled to protection. If there were no rules as to precedence and no duty devolving on those in control of trains within the yards to stop before going over crossings, as is contended by appellant, more care and diligence would devolve upon the employes in looking out for and discovering trains on the crossings. It can form no defense to say: "We were not in the habit of stopping at crossings or giving signals there, and we paid no attention to giving the right of way to trains reaching the crossings before we do, and, therefore, they get in our way at their peril, and they are guilty of contributory negligence, if they see us coming and do not get off the crossing before we get there."

The crossing in question was a grade crossing and clearly within the purview of article 4507, Revised Statutes, which requires that "each locomotive engine approaching a place where two lines of railway cross each other, shall, before reaching such crossing, be brought to a full stop." The point where the collision took place was undoubtedly "a place where two lines of railway cross each other," and the only exception to the requirement, "an interlocking switch and signal apparatus," is absent from this case. It is argued, however, that the law has no applicability to places where switch engines are operated, but that argument can not be sustained. The Supreme Court in Texas & Pac. Ry. v. Bailey, 83 Texas, 19, held that the part of the article 4507 in regard to whistling in approaching public roads and streets was applicable to engines switching cars back and forth in the city of Marshall, and the language in regard to railroad crossings is equally as comprehensive. The necessity for the law is apparent in the case, and if it had been obeyed the collision would not have occurred and a human life have been sacrificed. Appellant's employes could not, by a customary disregard of the statute, repeal it, and the claim that it would impede their work very much to observe it, is no palliation of their violation of the statute. The law is, "that every man operating a train, arriving at such a crossing, must bring it to a stop, whether there be present any visible necessity for so doing or not; and when the employes of a railway company fail to obey the statute in its plain and mandatory provisions," the companies must answer for the damages arising from such disobedience to law. San Antonio & A. P. Ry. v. Bowles, 88 Texas, 634. It was negligence *per se* to fail to stop the engine at the crossing, and undoubtedly the failure to stop it was the direct and proximate cause of the disaster and the death of Robert Murtle. The rule as to which train had the preference right to the crossing was of no moment, under the facts of the case, and the charge of the court thereon could not have injured appellant. The train of the Texas & Pacific Railway Company was on the track, whether by right of precedence or not, and if appellant had stopped its engine at the crossing, as it should have done, the accident would not have occurred. The engine should have been stopped regardless of any proximity to another train or whether the employes saw it or not, and the employes on the car

could act on the presumption that the law would be complied with and the engine stopped.

The evidence did not show beyond doubt that Murtle saw the train approaching, but if it had so shown, it could not have injured the cause of action, for if it had been admitted that Murtle did see the approaching engine that could not have altered his relation to it. He was authorized to presume that the employes in control of the engine would obey the law and stop it before reaching the crossing. The charge of the court is clear and fair, and was incapable of misconstruction by the jury. The issue as to Murtle seeing the approaching engine was fully presented by special charges asked by appellant and given by the court.

The state of case endeavored to be presented by the second special charge requested by appellant did not exist in the evidence and the court properly refused it. The effect of it was to raise an issue as to Murtle racing his train on the crossing to get ahead of appellant's train, and there was no foundation for such an issue in the evidence. The uncontroverted testimony showed that Murtle's train stopped in about 60 or 80 feet of the crossing, gave the usual blasts of the whistle, and then moved slowly on the crossing. When it started to the crossing the engine of appellant was perhaps two hundred yards off.

While we think that rule 325 was applicable to the crossing where the collision occurred, it did not matter whether it was or not, and the court did not err in refusing a charge stating that the rule did not apply to such crossing.

The court did not err in withdrawing all the rules except 325 from the jury, and that one might very properly have been withdrawn also. The only question was, Did appellant negligently run its engine into cars on a crossing? Under the facts of this case, the existence or nonexistence of rules could cut no figure whatever. No matter what they were, they could not justify appellant in violating the laws of the State and crashing into a train on a crossing. It follows that the court did not err in telling the jury that "if defendant's servants in charge of said engine and cars, which ran into the train upon which Murtle was, failed to keep a reasonably sufficient lookout, or failed to keep a reasonably sufficient lookout for transfers that might be passing along said link crossing across the track ahead of them, and failed to bring said engine and cars operated by them to a stop before reaching said switch," etc., appellant was liable. The failure to keep the lookout or the failure to stop the engine, either, or both, produced the death of Robert Murtle.

The square tank, like the one on appellant's engine, was more obstructive of the engineer's view of the track than the sloping ones used on switching engines, and the court did not err in submitting that issue. It may have been that the engineer would have seen the train but for the high square tank. There were several causes which seemed to concur with each other in producing the result. Ray v. Pecos & N. T. Railway (Texas Civ. App.), 88 S. W. Rep., 466.

Appellant in its sixteenth assignment of error complains of that

part of the judgment which gives the attorneys for appellees one-third of the judgment recovered by the latter. In the absence of pleading and evidence on the subject, or a verdict to support it, of course, the court had no authority for rendering such a judgment and the error is fundamental and should be considered, and especially is this the case where the interests of minors are concerned. Shippers Compress Co. v. Davidson, 35 Texas Civ. App., 558. Appellant made a motion to reform the judgment in the lower court so as to eliminate that portion of it, but it was overruled, and this was such error as will entitle appellant to a recovery of the costs of this appeal. Appellant was entitled to have the judgment rendered in compliance with the verdict so as to protect it from annoyance and possible harm.

There is no evidence of bias or prejudice on the part of the jury and we can not hold the verdict excessive. Robert Murtle was 43 years of age, was in good health and earned, the last month of his life, $150. He was a yard foreman.

There is nothing erroneous in the charge on the measure of damages. It did not single out and give prominence to any particular evidence, but simply permitted the jury to consider the amount contributed by Robert Murtle to the support of his family, in arriving at a verdict.

The twenty-fifth assignment does not point out any error in the charge. It properly presented the issue of contributory negligence.

Appellant sought a new trial on the ground, among other things, that an opportunity should be given to contradict Fred Barker, a witness for appellees, as to the distance from the crossing to the point where the engine was standing when the Texas & Pacific train started to the crossing. It was not stated that the testimony was newly discovered, but if such statement had been made it would not have availed, because new trials are not granted when the object merely is to impeach a witness. Scranton v. Tilley, 16 Texas, 193; Houston St. Railway v. Sciacca, 80 Texas, 350.

It was alleged as a ground of negligence that the employes of appellant disobeyed its rules and regulations in not stopping and giving signals and permitting the train to get over the crossing, and we do not think the mention of rule 325 in the statement of the pleadings made by the court could have operated injuriously to appellant. It was an immaterial matter anyway, and could not have influenced the verdict. It merely mentioned an issue raised by the evidence without objection on the part of appellant. The pleadings raised the issue.

The judgment will be reformed so as to eliminate that part of it in favor of Patterson & Wallace, and as reformed will be affirmed.

*Reformed and affirmed.*

Writ of error refused.