## ALLISON v. ARLINGTON HEIGHTS REALTY CO.

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 24, 1914.)

1. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—INSTRUCTIONS.

Any error in an instruction in an action for possession of land that, if, within 10 years before suit, defendant "stated to any person whomsoever" that he did not intend to claim title to the land, the jury should find that he had not acquired title by adverse possession, in that it permitted the jury to find that defendant told some one not mentioned in the evidence that he did not claim the land, was not reversible under Courts of Civil Appeals Rules, Rule 62a (149 S. W. x), prohibiting reversals, unless the appellate court believes that the error probably caused an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

2. TRIAL (§ 244*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

Where, in an action for realty claimed by defendant by adverse possession, the evidence of plaintiff's manager that defendants stated that he did not intend to claim the land was the only evidence contradicting defendant's testi-

---

mony that he did claim it adversely, and the general charge did not present that issue affirmatively, an instruction affirmatively submitting the issue for plaintiff by instructing that, if defendant had not formed an intention to appropriate the land, etc., was not objectionable as giving undue prominence to defendant's intention when he took possession.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

3. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

An instruction, in an action for possession of land claimed by defendant by adverse possession, in submitting the question of defendant's intention, that the intention or lack of intention of a party may be determined by the facts and circumstances in evidence was not on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

4. TRIAL (§ 269*) — HARMLESS ERROR — INSTRUCTIONS.

A notation on an instruction following the signature of plaintiff's attorneys "requested after the reading of the main charge and after the court's refusal of plaintiff's request to give a peremptory instruction in its favor, and given," was not calculated to mislead the jury to defendant's prejudice.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 676; Dec. Dig. § 269.*]

5. NEW TRIAL (§ 99*)—NEWLY DISCOVERED EVIDENCE.

Where, in an action for possession of land claimed by defendant by adverse possession, plaintiff's manager testified that, when defendant told him that he would not claim the land, H. was present and heard the conversation, alleged newly discovered evidence that, if any such conversation occurred between the manager and defendant, H. did not hear it was not ground for a new trial, being negative in character, and only impeaching the manager's evidence on the question whether H. was present when the conversation occurred.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 201, 207; Dec. Dig. § 99.*]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by the Arlington Heights Realty Company against M. C. Allison. From a judgment for plaintiff, defendant appeals. Affirmed.

McCart, Bowlin & McCart, of Ft. Worth, for appellant. Crenshaw & Boykin, of Ft. Worth, for appellee.

DUNKLIN, J. The Arlington Heights Realty Company instituted this suit against M. C. Allison to recover certain real estate, and, from a judgment in favor of the plaintiff, Allison has appealed.

The defendant claimed title under the statute of limitations of ten years, and this was the only controverted issue in the case, which was submitted to the jury in the general charge in the form of a special issue reading as follows: "Has the defendant, M. C. Allison, had peaceable and adverse possession of the property in controversy, cultivating, using, and enjoying the same, for a period of at least ten years prior to the filing of plaintiff's suit as against all persons whomsoever?" The issue so submitted was followed by the statutory definitions of "peaceable possession" and "adverse possession." The question so propounded by the court was answered by the jury in their verdict "No."

[1] The court also gave the following special charge No. 3 requested by the plaintiff: "If you find and believe from the evidence that at any time prior to the filing of this suit, and within ten years next preceding the bringing of this suit, the defendant, M. C. Allison, stated to any person whomsoever that he did not claim, or intend to claim, title to the lots in controversy, then you will answer the question propounded to you by the court 'No.'"

The suit was instituted December 9, 1910. Geo. E. Montgomery, witness for plaintiff and general manager of plaintiff corporation, testified as follows: "I had a conversation during the year 1906 with Mr. M. C. Allison, defendant, with regard to the fence around the lots above described. The conversation took place in front of Mr. Allison's house, which adjoins the lots in question, some time in 1906, the exact date of which I cannot recall. The substance of my conversation with Mr. Allison was as follows: I asked Mr. Allison to remove the fence from the properties. He assured me that he would set up no claim whatsoever to these lots, but, if we were not going to use them or sell them immediately, that he would like to use them as a garden. Upon this assurance, I permitted him to let the fence remain." No other witness testified to any such statements by Allison.

Error has been assigned to the instruction last quoted, upon the ground that the jury were thereby left "free to speculate on the possibility that Allison might have told somebody who is not mentioned in evidence during said ten years that he didn't claim to own said land in question." It is not reasonable to suppose that the jury indulged in such a speculation, in the entire absence of any basis therefor. At all events, if that objection should be otherwise tenable, it would be no ground for a reversal of the judgment under rule 62a (149 S. W. x).

The court also gave special charge No. 4, requested by the plaintiff, which reads: "If you believe from the evidence that, at the time M. C. Allison constructed the fence around the land in controversy, he had not formed an intention to appropriate said land and hold it by limitation, but that his intention to so appropriate and hold said land (if you find that he ever formed such intention) originated after he had built said fence and within a period less than ten years before the filing of plaintiff's suit, then you will answer the question propounded to you by the word 'No.' In this connection you are instructed that the intention, or lack of inten-

tion, of a party may be determined by you by the facts and circumstances in evidence before you." Error has been assigned to this instruction. The first objection urged thereto is that Allison's testimony as to his intention, which was favorable to his defense, was the only evidence that could be looked to for the purpose of determining his intention. Clearly this contention is unsound, in view of the testimony of Montgomery, already quoted.

[2] Another objection is that the instruction, taken in connection with the other special instruction already noted, "gave undue prominence to the question of Allison's intention when he took possession of the lands, notwithstanding Allison's undisputed testimony that he took possession of the same with the. intention of holding possession of the same adversely against the world." As it was absolutely necessary, in order to sustain the defense of limitation, to show that the possession was adverse, and as the facts detailed by Montgomery constituted practically the only evidence relied on by the plaintiff to offset Allison's testimony on that issue, there was no error in submitting, in an affirmative form, the theory supported by that evidence. The issue submitted in the general charge did not present this theory of the defense in an affirmative manner. N. Tex. Trac. Co. v. Moberly, 109 S. W. 483; M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058; So. Const. Co. v. Hinkle, 89 S. W. 309.

[3] Nor do we think that that part of the instruction, in effect, that the facts and circumstances in evidence could be considered by the jury in determining the question of Allison's intention in occupying the land, was on the weight of the evidence.

[4] Added to the instruction last quoted was a notation following the signature of plaintiff's attorneys thereto, reading: "Requested after the reading of the main charge and after the court's refusal of plaintiff's request to give a peremptory instruction in its favor, and given." Appellant insists that this notation was calculated to mislead and confuse the jury to appellant's prejudice. There is no merit in this criticism.

[5] By another assignment complaint is made of the refusal of appellant's motion for a new trial. The witness Montgomery. testified that, at the time of the conversation between him and Allison set out above, Rutland Hyams was present and heard the conversation. In appellant's motion for new trial, it was alleged that Rutland Hyams could be procured as a witness on another trial, and would testify that he was never present when any such conversation occurred between Montgomery and Allison; that, as a matter of fact, he was not acquainted with defendant, Allison, until some time after the date upon which Montgomery testified the conversation occurred. It was further alleg-

ed that Hyams resided in the state of Louisiana; that, after the depositions of Montgomery detailing the conversation above noted were filed in court, appellant's attorneys made diligent effort to learn the whereabouts of Hyams, but failed to locate him until after the trial; that the efforts so made included an inquiry of J. S. Hanford, one of the officials of plaintiff, also of one of the attorneys for plaintiff, each of whom informed the attorney making the inquiry that he did not know where Hyams could be found; that, as a matter of fact, the information so given was false, in that plaintiff, through some of its representatives, had corresponded with Hyams, and had attempted to procure his testimony to corroborate that of Montgomery, but that Hyams had refused to give such testimony; that appellant had learned by accident only, after the trial, of Hyams' whereabouts. According to the allegations in the motion Montgomery's depositions had been on file more than six months prior to the date of the trial. According to other allegations in the motion, it appears that appellant's attorneys relied in part upon their expectation that plaintiff would produce Hyams as a witness upon the trial. It does not appear that appellant made any inquiry of the witness Montgomery himself to ascertain the whereabouts of Hyams. It is not entirely clear that appellant used due diligence to procure the testimony of this witness before the trial, but, aside from that criticism, the proposed testimony was of a negative character only; if Hyams had been present, he would not have sworn that no such conversation occurred between Montgomery and Allison, which constituted the material portion of Montgomery's testimony, but the extent of Hyams' testimony would have been that, if any such conversation had occurred, he did not hear it, thus, in a measure, corroborating the testimony of Allison, and impeaching the testimony of Montgomery, upon the one point only whether or not he (Hyams) was present when the alleged conversation occurred, and hence there was no error in overruling the motion for a new trial. E. P. & S. W. Ry. Co. v. Murtle, 49 Tex. Civ. App. 273, 108 S. W. 999; Tex. Cent. R. R. Co. v. Dumas, 149 S. W. 543.

The judgment is affirmed.