**LOPEZ v. MISSOURI, K. & T. RY. CO. OF TEXAS et al. (No. 6416.)**

(Court of Civil Appeals of Texas. San Antonio. May 26, 1920. Rehearing Denied June 16, 1920.)

**1. Marriage ☞40(6) — Agreement to marry woman and cohabiting with her without legal ceremony not basis for presumption of divorce from legal wife.**

The fact that a man leaves a lawful wife and lives in a state of cohabitation with another woman without a legal ceremony and with an agreement that they will be married cannot form a basis for a presumption that he had been divorced from his legal wife.

**2. Marriage ☞40(8)—Once established presumed to continue.**

Where a marriage is once established, it is presumed to continue until the contrary is proved.

**3. Marriage ☞40(1, 6)—Presumption of competency of parties and death or divorce of former spouse does not extend to common-law marriage.**

When there has been a formal marriage according to legal requirements, the law will presume the competency of the parties to enter into marriage contracts, and will presume that any former marriage of either was dissolved by death or divorce, but such presumption does not extend to a cohabitation with an agreement that the parties would marry, since the law merely tolerates common-law marriages, and does not encourage them.

**4. Death ☞31(6)—Woman unlawfully cohabiting with husband of another not entitled to sue.**

The statutory cause of action to recover damages for death is "for the sole and exclusive benefit of the surviving husband, wife, children and parents" of the deceased as provided by Rev. St. 1911, art. 4698, and a woman cohabiting unlawfully with a man has no right to such damages, even though she did not know he had ever been married.

**5. Marriage ☞50(5)—Evidence held insufficient to establish common-law marriage.**

In an action for a man's wrongful death, evidence *held* insufficient to show that plaintiff was his common-law wife, even if he did not have another wife living at such time; the agreement shown being one to get married, and not a marriage contract.

**6. Marriage ☞33—Binding without cohabitation if celebrated under forms of law.**

A marriage celebrated under the forms of law is valid and binding, whether cohabitation takes place or not, and, although there is no cohabitation, an innocent third party otherwise eligible has no lawful right to contract a second marriage with one of the parties.

**7. Marriage ☞40(7), 44 — Ceremonial marriage in foreign country presumed in accordance with its laws; may be proved by witness without producing certificate.**

A ceremonial marriage may be proved by the testimony of eyewitnesses without the production of the marriage certificate, or explanation of its absence, and proof of a ceremonial marriage in a foreign country carries the presumption that it was in accordance with that country's laws.

**8. Marriage ☞50(1)—Evidence held to show that plaintiff's common-law husband was husband of another.**

In a woman's action for a wrongful death of her alleged common-law husband evidence

*held* sufficient to show that deceased was the lawful husband of another, so that plaintiff was not his common-law wife.

**9. Appeal and error ⬥99—New trial not warranted by immaterial impeaching evidence.**

Plaintiff seeking damages for the unlawful death of her alleged common-law husband is not entitled to new trial for newly discovered evidence which could be used only to impeach witness who testified that deceased was the lawful husband of another, which evidence was not material, because plaintiff failed to show a common-law marriage, even though such former marriage did not exist.

**10. Pleading ⬥11—Not necessary that defendant plead defensive evidence.**

In an action for wrongful death of plaintiff's alleged common-law husband, it was not incumbent upon defendants to plead the evidence to show that plaintiff had never married the deceased, and they could produce evidence to prove that deceased was the lawful husband of another by a prior existing marriage.

**11. New trial ⬥102(1)—Not granted where movant had knowledge of facts, but did not investigate.**

Where plaintiff, suing for death of her alleged common-law husband, had notice through affidavit long prior to trial that deceased was previously married in Mexico, but made no investigation whatever, a new trial for newly discovered evidence relative to marriage would not be granted.

**12. Appeal and error ⬥933(4)—Affidavit for continuance showing facts putting movant for new trial on notice presumed to have come to knowledge of movant at date of application.**

In action by alleged common-law wife for death of husband defended on ground of prior existing marriage, appellate court will presume to uphold denial of new trial for newly discovered evidence as to marriage that affidavit for continuance showing that deceased was married in Mexico was filed as of date of application for continuance and came to knowledge of movant at that time.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Tiburcia Lopez against the Missouri, Kansas & Texas Railway Company of Texas and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Davis & Long and Henry B. Cline, all of San Antonio, for appellant.

C. C. Huff, of Dallas, and F. C. Davis and Marshall Butz, both of San Antonio, for appellees.

FLY, C. J. Appellant, describing herself as Tiburcia Lopez Vda de Simon Garcia, instituted this suit for damages against the railway company and Charles E. Schaff, its receiver, to recover damages alleged to accrue to her on account of the negligent killing of Simon Garcia, alleged to have been her husband by a common-law marriage. The marriage was denied by appellees, and other defenses presented. The cause was submitted to a jury on five special issues, the first being:

"At the time of the death of Simon Garcia, was the plaintiff, Tiburcia Lopez de Garcia, his lawful wife?"

The jury was instructed that, if Simon Garcia had a lawful living wife when it was claimed the common-law marriage was consummated, there could be no common-law marriage, and, if it was found that there was no legal marriage, no other questions need be answered. The jury found that appellant was not the legal wife of Simon Garcia, and upon that finding judgment was rendered denying a recovery to appellant.

There are 19 assignments, 12 of which involve discussions of the evidence as to the marriage of appellant to Simon Garcia, the remainder complaining of the refusal to grant a new trial, one ground of which was the discovery of new and important testimony. They are all overruled for the reasons hereinafter given.

There was testimony that showed that Simon Garcia was legally married to Demetria Hernandez in the republic of Mexico, and came to San Antonio, Tex., with her in 1912; that in 1914 or 1915 he entered into illicit relations with appellant, but did not live with her until about seven months before his death, when he abandoned his wife, and appellant followed him to Smithville and was cohabiting with him at the time of his death, which occurred on June 4, 1916. There was no evidence of any divorce from Demetria, the lawful wife, who was left with his mother and brother, and still lives with them. The jury, even though there had been no lawful wife, could have rejected the claim of a common-law marriage. Appellant stated at one time that she was 53 years old, but amended it by saying it was 43 and Simon Garcia was 39. There was no evidence, direct or circumstantial, tending to show that Simon Garcia had been divorced from his wife, Demetria. Appellant contended that they had never been married, but the jury was justified in believing they had been legally married, and that such relation existed when Simon Garcia was killed.

[1, 2] It is the contention of appellant that the presumption that Simon and Demetria Garcia had been divorced would arise because appellant swore that there had been an agreement between her and Simon Garcia to live together as man and wife. The

fact that a man leaves a lawful wife and lives in a state of cohabitation with another woman without a legal ceremony cannot form a basis for a presumption that he had been divorced from his legal wife. Of course, no authority is produced for such a proposition. On the other hand, it is a rule of evidence that, where marriage is once established, it is presumed to continue until the contrary is proved. Odom v. Woodward, 74 Tex. 41, 11 S. W. 925; Summerhill v. Darrow, 94 Tex. 71, 57 S. W. 942. The cases cited by appellant present very different facts from those found in this case, and no case has been cited where a marriage will be presumed to have been annulled by divorce to legalize adultery.

[3] When there has been a formal marriage, according to legal requirements, the law will presume the competency of the parties to enter into the marriage contract, and will presume that any former marriage of either of the parties was dissolved by death or divorce. This is based on the desire of the law to protect innocence, morality, and legitimacy rather than presume the continuance of the first marriage. When a marriage is proved according to statutory forms, it will be presumed to be legal until shown to be illegal. Schaffer v. Richardson, 125 Md. 88, 93 Atl. 391, and cases therein reviewed. No case has been brought to our notice where cohabitation for a few months and testimony of one of the parties to the cohabitation that there had been an agreement that they would marry would destroy the presumption of the continuation of a legal marriage theretofore consummated. The law is disposed to raise presumptions in favor of the legality of marriages entered into under legal forms, but not one consummated as appellant claims her marriage to Simon Garcia was consummated. The law merely tolerates a common-law marriage, but does not encourage or favor it.

[4] The fact that appellant, when she began cohabiting with Simon Garcia, did not know that he had ever been married would not give her the right under the statute to recover damages for his death. The statutory cause of action to recover damages for a death is "for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been caused." Article 4698, Rev. Stats. No mention is made in that statute of a woman living with a man unlawfully having the right to recover because she did not know he was married. The law is for the benefit of the woman who has been joined in lawful wedlock to the man who has been killed.

[5] The evidence failed to establish a common-law marriage, even though there had been no prior marriage of Simon Garcia. Appellant testified that on April 2, 1914, she had an agreement with Simon Garcia to live with him as his wife. She stated the conversation to have been as follows:

"We said that we would live together as man and wife, and would live happily, and that we were going to get married. He talked that way to me, and when he said that I said 'Yes.'"

After that, she said, they lived together as man and wife. The only witness who corroborated appellant as to Simon Garcia calling her his wife was Mrs. M. Moke, who stated that she saw the couple at a dance in May, 1915, and Simon Garcia introduced appellant to the witness as his wife and said "that she was a very nice companion to him." Again she said: "Yes, sir; Simon Garcia said that night that this woman would be a nice friend to him; he admitted that she was a nice companion to him." She might have been all that and still not his wife. According to appellant they did not then agree to marry, but "were going to get married"— that is, at some future time.

[6] We know of no law supporting the claim of appellant that, although Simon and Demetria may have been lawfully married, if he abandoned her immediately after the celebration of the marriage, any "innocent third party, who is otherwise eligible, has the lawful right to contract a second marriage with such man." A marriage celebrated under forms of law is a valid and binding marriage, whether cohabitation takes place or not. However, the evidence is sufficient to show that Simon and Demetria, after marriage, reared a child and necessarily lived together.

[7] The marriage of Simon and Demetria Garcia could be proved by oral testimony, and the general rule is that a ceremonial marriage may be proved by the testimony of eyewitnesses, without the production of a marriage certificate and without explaining its absence. 18 R. C. L. 423. Proof of a ceremonial marriage in a foreign country carries with it the presumption that it was performed in accordance with the laws of that country. And the marriage in a foreign country may be proved by the testimony of any person who was present at the ceremony. 18 Ruling Case Law, p. 427.

[8] Demetria and Simon Garcia not only reared a brother of his, but after his death Demetria was recognized by his mother and brother as his widow, and came to live with them. Simon Garcia supported his wife, mother, and brother. They lived together in the most perfect harmony. He did not live with appellant in San Antonio, but when he went to Smithville, about seven months before his death, appellant followed him and entered into her illicit relations with him. Appellant has not even the lapse of many years, as in some of the cases cited by her, to

sanctify the cohabitation into which she entered with Simon. According to her own testimony, it could not have been more than two years, and according to that of other witnesses, found by the jury to be true, not more than seven or eight months. No children came from the illicit relations between Simon Garcia and appellant, and they cannot be considered, as is often done, to legalize certain acts and create a marriage for their protection. In the case of Nixon v. Land Co., 84 Tex. 408, 19 S. W. 560, both parties to the first marriage had married again, and many years had elapsed before the validity of the second marriage was attacked. A common-law marriage did not figure in that case nor any of the others cited by appellant.

[9] In order to obtain a new trial on the ground of newly discovered evidence, it must clearly appear that it was not known before the trial; that it is material and would probably change the result; could not have been discovered before the trial by the exercise of reasonable diligence; that it is not cumulative or merely to be used for purposes of impeachment. The evidence sought was not material because, the evidence being insufficient to show a common-law marriage, appellant had no cause of action, whether a former marriage existed or not. The newly discovered testimony could have been used for no other purpose except to impeach the witnesses who swore that Simon was married to Demetria Garcia in Mexico. It is firmly settled in Texas that a new trial will rarely, if ever, be granted on the ground of newly discovered evidence, when its object is to impeach the witnesses of the successful party. Jones v. Neal, 44 Tex. Civ. App. 412, 98 S. W. 417; Railway v. Murtle, 49 Tex. Civ. App. 273, 108 S. W. 998.

[10] Appellees denied that appellant ever entered into a common-law marriage, but that she was a woman of loose and immoral character, and that her relation to Simon Garcia was meretricious and illegal. It was not incumbent upon them to plead the evidence by which they intended to show that appellant had never married Simon Garcia. They could prove a prior existing marriage to support the allegation. It is a matter of small importance, if the marriage took place in Mexico between Demetria and Simon Garcia, whether it was in Torreon or Morales.

[11, 12] Appellant attached to a bill of exceptions an affidavit made by Demetria Hernandez de Garcia to an application made by appellees for a continuance, purporting to have been sworn to on April 18, 1918, more than a year and a half before this cause was tried, in which it was stated that Simon Garcia and Demetria Hernandez were married in Torreon, Mexico, in 1903, and yet appellant states that she had no notice that an attempt would be made to show that a marriage between Simon and Demetria had been celebrated in Mexico. Where she got the affidavit of Demetria Hernandez de Garcia or when she came into possession of it is not disclosed. It must be presumed that it was filed in support of the application for continuance on its date and came to the knowledge of appellant at that time. No claim is made that appellant was caused to investigate the records of Torreon as to a marriage, and could not know that witnesses would state that the marriage took place in Morales. No investigation of any sort was made until an adverse judgment to appellant was rendered. There was no diligence shown in procuring the testimony, and no effort made to ascertain the status of Demetria and Simon Garcia. Appellant knew for more than a year before the trial that one of the defenses of appellees to her cause of action would be that Simon Garcia was already married to Demetria Hernandez in Mexico, and yet no effort was made to obtain testimony controverting that defense. It is practically admitted that appellant knew that Demetria had sworn that she was married to Simon Garcia, because it is said in the brief:

"It looks as if the prior marriage was placed at Torreon, Mexico, to deceive appellant and her attorneys and thus prevent them from making the proper inquiry in time for the trial."

They made no inquiry, proper or otherwise, although they knew that the prior marriage was to become an issue on the trial of the cause.

The judgment is affirmed.