**Affirmed and Memorandum Opinion filed January 8, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00816-CV

---

## ESTATE OF SCOTT GREGORY SUMMERS, DECEASED

---

**On Appeal from the Probate Court
Galveston County, Texas
Trial Court Cause No. PR-0073663**

---

## M E M O R A N D U M   O P I N I O N

In this proceeding to determine heirship, the sole issue is whether the evidence is factually sufficient to support the trial court's findings of fact underlying its conclusion of law that Kathleen Martorell Marden and Scott Gregory Summers, the decedent, were not informally married. We affirm.

### Facts and Procedural Background

Marden and the decedent started dating in 2008. Marden moved in with the decedent in August 2008. The couple lived together until the decedent died intestate on May 2, 2012 in Houston, Harris County, Texas. After learning of the

decedent's death, the decedent's son, Gregory Lance Summers, filed an application for letters of administration and an application for a proceeding to determine heirship. *See* Tex. Estates Code Ann. §§ 202.005, 301.052 (West 2014). Marden objected to Summers's application for a proceeding to determine heirship, claiming that she was the decedent's wife by informal marriage. Marden also filed an application for letters of administration. The trial court held a hearing to determine heirship.

At the heirship hearing, Marden testified that she and the decedent began dating in April or May of 2008 and she moved in with him in August of that same year. Marden stated that she and the decedent decided to be husband and wife in approximately 2009; then, they discovered that the decedent was still married to his prior wife. Therefore, they "got married again after that one." She said that she and the decedent "were eventually supposed to go to Las Vegas. . . . We were going to go to Vegas and get married by an Elvis impersonator." Marden further testified that she told everybody that she and the decedent were married. Marden indicated that she had to tell everyone because the decedent was a lady's man. Marden acknowledged that the decedent cheated during the four years they were together as a couple. Marden did not wear a wedding ring; however, she testified that her pickup truck was her wedding ring. Further, Marden testified that the decedent told her she would be the last Mrs. Summers.

Marden also testified that the decedent filed a document with his employer indicating that Marden and the decedent were married. This document was not admitted into evidence. However, the court did admit Marden and the decedent's joint tax returns and a pay stub from the decedent's employer, BNSF Railway Company. The tax-return exhibit contains a copy of the couple's 2010 tax return and a copy of one page from their 2011 tax return. The 2010 portion of the tax-

return exhibit is marked "Copy Only Do Not File." Marden explained that she obtained the copy from John Brown, the tax preparer. The 2010 portion of the exhibit bears the signature of John Brown. In the signature blanks for the filers, the following typed statement appears: "For Info Only – Do not file." The 2011 portion of the exhibit does not have any signatures. The 2010 and the 2011 tax returns bear the names of both the decedent and Marden, and in the Filing Status section of both tax returns, the "married filing jointly" box is checked. The decedent's pay stub has a box entitled "Status." The box contains the letter "M." According to Marden, this shows that the decedent's status was "married."[1]

Finally, Marden testified about the decedent's May 2012 accident and death. She went to the hospital after hearing of the decedent's accident. Gregory had already instructed the hospital that he was the next of kin, so after two days at the hospital Marden "went to the legal department of Hermann Memorial." Marden stated, "They took next of kin from Gregory. It was assigned to me. And I unplugged his father that morning because the outcome would have been horrific; and he would have been a quadriplegic."

Linda Moore, one of Marden's friends, testified that the decedent would introduce Marden to others as his wife. Moore urged that the decedent never denied that he and Marden were married. Further, Moore recalled the decedent and Marden coming to the office of the lawyer for whom she worked for the purpose of doing "their insurance"; however, it was at that time that the decedent discovered that he was still married to another woman. It was Moore's employer who subsequently represented the decedent in his May 2010 divorce. Moore did not know whether the decedent or Marden wore a wedding ring.

---

[1] We note that the pay stub does not indicate who the decedent was married to.

Joel Grimmett, one of Marden's coworkers, testified that the decedent introduced and referred to Marden as his wife.

Marden's adult daughter testified that she lived with the decedent and Marden for approximately one year. She lived with them until the November before the decedent's death. She described meeting the decedent about six years earlier. She testified that after the decedent and Marden had been together for about two years, the decedent asked her for permission to marry Marden. According to Marden's daughter, after the decedent asked for permission to marry Marden, he and Marden did "some paperwork and stuff like that, and I had to be put on the insurance after they were married so that I could be under his insurance plan." Marden's daughter also stated that the decedent wore a Harley Davidson ring on his "wedding finger." She did not know whether Marden had a wedding ring. Marden's daughter did not know whether Marden and the decedent followed through with their plans to have a ceremonial wedding.

David Etzel was the decedent's friend of 14 years and one of his coworkers. Etzel testified that the decedent never spoke about getting remarried or planning to remarry. In the four to five months before the decedent's death, Etzel and the decedent spoke five to six times per week. During that time Etzel also visited the decedent's home as often as twice per week. Etzel was aware that the decedent and Marden lived together; however, to Etzel's knowledge, the decedent was not married to Marden at the time he died. Etzel testified that the decedent never referred to Marden as his wife and never indicated to Etzel that he and Marden had agreed to be married. Etzel testified that the decedent did not wear a wedding ring. Additionally, according to Etzel, it was possible to put non-relatives onto their company's insurance plan.

Janice Summers was the decedent's adoptive mother. She testified that the decedent did not remarry after his May, 2010 divorce. Summers further testified that Marden was the decedent's girlfriend and that the decedent never expressed to her that he was, or intended to be, married.

Jane Randolph, the decedent's mother-in-law from his first marriage,[2] kept in touch with the decedent intermittently. She did not think he was married at the time of his death.

Rick Summers, the decedent's brother, testified that he "hung out" with the decedent every couple of months. He further testified that, based on his relationship with his brother, he believes the decedent would have told him if he was married. As a result of the manner in which the decedent described his relationship with Marden, Rick stated that the decedent was not married at the time of his death and that Marden was just a friend from Texas.

During the hearing, Etzel also stated that the decedent would publically refer to Marden as his "old lady." Etzel explained that among his and the decedent's motorcycle friends the term "old lady" could mean girlfriend or could mean wife. The parties elicited other testimony regarding the meaning of that term. Moore acknowledged that the term "old lady" refers to a person with whom the declarant is in a "serious relationship." Grimmett testified that "old lady" is synonymous with "girlfriend."

After the hearing, the court made the following relevant findings of fact and conclusions of law:

- Kathleen Martorell Marden and Decedent did not have an agreement to be married.

---

[2] Not counting his alleged informal marriage to Marden, the decedent had been married five times.

- Kathleen Martorell Marden and Decedent cohabitated in Texas.
- Kathleen Martorell Marden and Decedent did not hold out to others that they were married.
- Kathleen Martorell Marden is not the surviving spouse of Decedent.
- Decedent was not married at the time of his death.

Appellant timely appealed. On appeal, Marden contends that the evidence is factually insufficient to support the trial court's findings regarding the decedent's marital status.

## Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings are reviewed for factual sufficiency of the evidence under the same legal standards as are applied to review jury verdicts for factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

When, as here, a party challenges the factual sufficiency of an adverse finding on an issue on which that party has the burden of proof, the factual-sufficiency challenge will be sustained only if the trial court's findings are so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When conducting a factual-sufficiency review, we must consider all the evidence in the record. *Francis*, 46 S.W.3d at 242. The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). We cannot

substitute our own judgment for that of the factfinder even if we would reach a different answer on the evidence. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The amount of evidence necessary to affirm the factfinder's judgment is far less than that necessary to reverse its judgment. *Id.*

## Discussion

An informal or common-law marriage exists in Texas if the parties (1) agreed to be married, (2) lived together in Texas as husband and wife after the agreement, and (3) there presented to others that they were married. *See* Tex. Fam. Code Ann. § 2.401(a)(2) (West 2006); *Mills v. Mest*, 94 S.W.3d 72, 73 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The existence of an informal marriage is a fact question, and the party seeking to establish the existence of the marriage must prove the three elements by a preponderance of the evidence. *Weaver v. State*, 855 S.W.2d 116, 120 (Tex. App.—Houston [14th Dist.] 1993, no pet.). An informal marriage does not exist until the concurrence of all three elements. *Eris v. Phares*, 39 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

The parties do not dispute that Marden and the decedent lived together in Texas. Therefore, our discussion will focus on the first and third elements of informal marriage—the agreement and holding-out elements. "To establish an agreement to be married, 'the evidence must show the parties intended to have a present, immediate, and permanent relationship and that they did in fact agree to be husband and wife.'" *Small*, 352 S.W.3d at 283 (quoting *Eris*, 39 S.W.3d at 714). The proponent can prove this element by direct or circumstantial evidence. *Id.*

"Holding out" or "presenting to others" can be established by the conduct and actions of the parties. *Id.* at 285. Occasional introductions as husband and wife

7

are not sufficient to establish the element of holding out. *Id.* The holding out element is established if the couple had a reputation in the community for being married. *Id.* "Reputation in the community for being married" means the couple "consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id.*

The evidence relating to the agreement and holding-out elements was conflicting. With regard to the agreement element, the record could support a finding that Marden and the decedent agreed to be married. Marden and the decedent were living together at the time of the decedent's death, and several witnesses testified that Marden and the decedent referred to each other as husband and wife. This circumstantial evidence constitutes some evidence of an agreement to be married. *See id.* at 283 (agreement to be married can be proved by direct or circumstantial evidence).

On the other hand, the record, including Marden's own testimony, also supports a finding that Marden and the decedent did not agree to be married. Marden testified that she and the decedent planned to marry in Las Vegas. Such testimony suggests an agreement to get married, not an agreement to be married. Additionally, Marden's daughter testified that the decedent asked for permission to marry Marden. This testimony also falls short of a present and immediate agreement to be married; rather, it indicates that Marden and the decedent planned to marry at some point in the future. *See, e.g.*, *Lopez v. Mo. K. & T. Ry. Co.*, 222 S.W. 695, 697 (Tex. Civ. App.—San Antonio 1920, writ dism'd) (finding no informal marriage when couple did not presently agree to marry, but were "going to get married" in the future). Furthermore, just as an agreement could be inferred from the circumstantial evidence summarized above, other circumstantial evidence indicates that Marden and the decedent did not agree to be married. Specifically,

several witnesses testified that the decedent did not refer to Marden as his wife; the decedent did not intend to remarry; and Marden was only the decedent's girlfriend, not his wife.

With regard to the holding-out element, the record contains some evidence supporting the holding-out element of informal marriage. The testimony of Marden, Moore, and Grimmett indicated that both Marden and the decedent introduced each other publically as husband and wife. Additionally, some of the documentary evidence admitted by the trial court suggests that Marden and the decedent did hold themselves out as a married couple.

On the other hand, the record also supports a finding that Marden and the decedent did not hold out to others that they were married. For example, Etzel, Janice Summers, and Rick Summers, witnesses who had a close relationship with the decedent, all testified that Marden was only the decedent's friend or girlfriend. Etzel also testified that the decedent did not refer to Marden as his wife. And, although the term "old lady" could mean "wife" in certain circumstances, the evidence in this case suggests that the term could also mean "girlfriend" or refer to a person with whom the declarant is in a "serious relationship." Finally, given the nature of the unsigned tax-return exhibit and pay-stub reference to "M," the trial court was not bound by Marden's characterization of the documentary evidence.

The resolution of the conflicting evidence turned on witness credibility and the weight given to the evidence. It was within the trial judge's purview to resolve these conflicts. *Small*, 352 S.W.3d at 284; *see, e.g.*, *In re Estate of Walker*, No. 02-08-00371-CV, 2009 WL 1996301, at *4 (Tex. App.—Fort Worth July 9, 2009, no pet.) (mem. op.). The trial court resolved the conflicting evidence by finding that Marden and the decedent had not entered into an informal marriage. After viewing all of the evidence, we cannot say the evidence supporting the trial court's findings

is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Therefore, the evidence is factually sufficient to support the trial court's findings.

We overrule Marden's sole issue on appeal.

## Conclusion

Having overruled Marden's sole issue on appeal, we affirm the trial court's judgment.


/s/        Marc W. Brown
                     Justice


Panel consists of Justices McCally, Brown, and Wise.