FIRST NAT. BANK OF MINEOLA et al. v. MINEOLA STATE BANK.

(Court of Civil Appeals of Texas. Dallas. March 8, 1913. Rehearing Denied March 29, 1913.)

1. JUDGMENT (§ 249*) — CONFORMITY TO PLEADINGS AND FINDINGS.

Plaintiff alleged that it furnished the money with which a dealer purchased cotton delivered to the defendant compress company, the receipts of the compress company being delivered to it as collateral, and that the compress company and defendant bank converted the cotton. The defendant bank pleaded an agreement between it and plaintiff after the dealer's failure by which the cotton was to be shipped, and it and plaintiff each have the proceeds of so much as it furnished the money to pay for. The court found that the cotton alleged to have been converted was paid for by plaintiff, and that, under the agreement, plaintiff was entitled to recover its value. Held, that the judgment was not erroneous on the ground that plaintiff sued for conversion and recovered under the agreement, since it was proper for the court in rendering judgment to consider all the pleadings of the· parties, and besides if there was such an agreement, and defendant sold and received the money for part of the cotton paid for by plaintiff, and failed to account therefor, it was guilty of a conversion, and it would be presumed that the trial court so concluded, although not expressly stated.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 435; Dec. Dig. § 249.*]

2. TROVER AND CONVERSION (§ 16*)—SUFFICIENCY OF EVIDENCE—IDENTITY OF PROPERTY.

Plaintiff and defendant bank each furnished money to a dealer with which he purchased cotton, taking a compress company's receipts as collateral. After the dealer's failure, it was agreed that the cotton should be shipped, and that the parties should each have the proceeds of that which they furnished the money to pay for. There was then in possession of the compress company 191 bales for which plaintiff had paid, and it subsequently received the proceeds of 163 bales. When all was shipped except 28 bales, plaintiff demanded such bales from the compress company, which refused to deliver them and turned them over to defendant bank. Held, that plaintiff could recover against both the compress company and defendant bank, although the receipt held by it did not describe the particular cotton covered thereby, and the evidence did not show the particular bales of cotton covered by the receipt.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 119–147; Dec. Dig. § 16.*]

3. TROVER AND CONVERSION (§ 53*)—MEASURE OF DAMAGES.

The measure of damages for the conversion of personal property is the value of the property converted with legal interest from the date of the conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 254; Dec. Dig. § 53.*]

4. JUDGMENT (§ 256*)—CONFORMITY TO FINDINGS.

In an action for conversion, the court properly included in the judgment interest from the date of the conversion, although it made no specific finding that plaintiff was entitled to recover interest.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

Appeal from District Court, Wood County; R. W. Simpson, Judge.

Action by the Mineola State Bank against the First National Bank of Mineola and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Hart, Hart & Landers and E. A. Tharp, all of Mineola, for appellants. Jones & Jones, of Mineola and Quitman, for appellee.

TALBOT, J. Appellee, the Mineola State Bank, instituted this suit against the First National Bank of Mineola, Tex., and the Citizens' Compress Company of Mineola, Tex., for the value of certain cotton. The material parts of the amended petition, upon which the case was tried, are as follows: That the defendant Citizens' Compress Company is engaged in the business of compressing cotton; that it stores and holds cotton and other produce for the general public for hire, and it holds itself out to the public generally as being engaged in the business of compressing cotton and a warehouseman. That during the latter part of the fall and winter of 1909, and during the spring of 1910, plaintiff and the Mineola National Bank furnished to the Jackson Bell Cotton Company of Greenville, Tex., the money with which to purchase and pay for a large number of bales of lint cotton, loaning the money to said cotton company to buy said cotton, and taking as collateral for such loans the compress receipts given by the defendant Citizens' Compress Company to the said Jackson Bell Cotton Company. That the sum due plaintiff by Jackson Bell Cotton Company on March 17, 1910, was $3,000. That the defendant the Citizens' Compress Company, for hire, received said cotton and held same for the plaintiff the Mineola State Bank and the said Jackson Bell Cotton Company. That said receipts were evidence of possession on the part of the plaintiff and the Mineola National Bank of said cotton, or of so many bales of said cotton held by said compress company for the said Jackson Bell Cotton Company, as representing the number of bales bought by plaintiff and the Mineola National Bank for the said Jackson Bell Cotton Company. That in this way plaintiff and the Mineola National Bank bought for the said Jackson Bell Cotton Company a large number of bales of cotton, and took as aforesaid compress receipts issued by the defendant compress company to said Jackson Bell Cotton Company, and said cotton was placed in the possession of the defendant for this plaintiff and the Mineola National Bank. That heretofore, to wit, on the 17th day of March, 1910, the said Citizens' Compress Company held as aforesaid more than 30 bales of cotton belonging to this plaintiff and the Mineola National Bank, which said cotton had been set apart to this plaintiff and the Mineola National Bank and recognized by the Jackson Bell Cotton Company as the property of this plaintiff and the Mineola National Bank, said cotton having been paid for by this plaintiff and the Mineola National Bank by virtue of the fact that this plaintiff and the Mineola National Bank advanced money to pay for the same number of bales of cotton as was held by the said compress company for it, and the said cotton having been turned over to it by the said Jackson Bell Cotton Company, and recognized as the property of this plaintiff.

That, if plaintiff did not in truth and fact own said cotton, then said cotton had been pledged to it to secure the sums of money due it by said Jackson Bell Cotton Company. That plaintiff and the Mineola National Bank held compress receipts for said cotton, which the defendant Citizens' Compress Company well knew, and which the defendant First National Bank of Mineola well knew, and that said cotton had been delivered to this plaintiff and the Mineola National Bank for the purpose of satisfying an indebtedness due this plaintiff and the Mineola National Bank by the said Jackson Bell Cotton Company, and both defendants knew that the plaintiff and the Mineola National Bank owned said cotton and had full knowledge of all plaintiff's rights and title in and to said cotton. But that on or about the 17th day of March aforesaid the said defendant the Citizens' Compress Company, without the consent of the plaintiff, delivered to the First National Bank of Mineola, one of the defendants herein, 28 bales of said cotton of the value of $70 per bale, or of a total aggregate value of $1,960. And the said First National Bank of Mineola, Tex., took said cotton without the consent of this plaintiff out of the possession of said compress company, who was holding said cotton for this plaintiff, and converted said cotton to its own use and benefit or to the use and benefit of itself and the defendant the Citizens' Compress Company, to plaintiff's damage in the said sum of $1,960. That by the conversion of said cotton to their own use and benefit the defendants became indebted to plaintiff and the Mineola National Bank in the value of same as above named, which debt they refused to pay. Plaintiff further alleged that it had presented to the defendant the Citizens' Compress Company its said receipt for said 28 bales of cotton, but said defendant has wholly failed and refused to deliver said cotton or any part thereof. It was then alleged that the Mineola National Bank had gone into liquidation and that the Mineola State Bank was the owner of all its property, including the choses in action, etc.

The First National Bank of Mineola filed its second amended answer on the 25th day of April, 1912, in which it pleaded, in substance, a general demurrer, general denial, and specially that, if plaintiff had ever had any lien upon the cotton bought by Jackson Bell Company, it had waived and released its lien by reason of the fact that both plaintiff and defendant had furnished money to Jackson Bell & Co. with which to purchase cotton for said cotton company, and that the plaintiff permitted said cotton to become mixed and commingled with the cotton of defendant First National Bank to such an extent that it was impossible for it to identify the cotton paid for by plaintiff. They further alleged in substance, that if plaintiff ever had any lien upon said cotton it had waived same by permitting Jackson Bell &

-Co. to ship out cotton whenever they desired to do so, and in not requiring said Jackson Bell & Co. to account to plaintiff for the identical bales of cotton paid for by plaintiff. It also specially pleaded as follows: "That said plaintiff and defendant agreed to divide all of the cotton upon the yards of the Mineola Compress Company, so that each bank would receive the proceeds of the cotton paid for by them, respectively, and made said agreement in settlement and satisfaction of all claims against each other, and had it understood that said division of said 700 bales or about that number between them as they had paid for same would extinguish the claims that each bank might have against the other for receiving the proceeds, if any they had, of any of the cotton paid for by the other bank; that said agreement was carried out and acted upon by said defendant bank in compliance with and to carry out said compromise, settlement, agreement, and understanding." Defendant bank then pleaded in reconvention for a consideration sum of money.

The defendant Citizens' Compress Company answered on November 24, 1911, by general demurrer, general denial, and specially pleaded over against its codefendant, the First National Bank of Mineola, upon a bond which said bank had executed to protect it from any loss or damage on account of delivering a certain lot of cotton to the said First National Bank. The defendant First National Bank waived in open court its plea in reconvention; no exceptions were made to any pleadings, and the case was tried before the court without a jury on the 25th day of April, 1912, and judgment was rendered for appellee against the appellant First National Bank of Mineola for sums aggregating $1,938.34, and against the Citizens' Compress Company for sums aggregating $1,769.52. The judgment of the court also provided that the defendant the Citizens' Compress Company should have judgment against the defendants the First National Bank of Mineola, Tex., and B. B. Hart, C. C. Sisler, and R. J. Gaston, as sureties on its indemnity bond executed and delivered to said compress company, for the sum or sums of money as said compress company may be required to pay the plaintiff. From the judgments against them, respectively, the defendants appealed.

Appellants seek to reverse the cause alone upon errors assigned to the findings of the trial court. These findings, which are adopted by this court, are as follows:

"The Mineola National Bank and the First National Bank of Mineola, Tex., were doing a banking business during the cotton season of 1909 and 1910; during this time, on, to wit, November 26, 1909, the Mineola State Bank, plaintiff herein, took over all the assets by regular transfer of the Mineola National Bank. The defendant compress company had and operated a cotton compress in the city of Mineola during the cotton season of 1909–1910. Jackson Bell & Co. during said season bought cotton in Mineola and surrounding territory, and delivered same to the compress company for compress. The course pursued by the banks, compress company, and purchasers of cotton were as follows: The purchaser of cotton would deliver same to the compress company, and take its receipt for the number of bales delivered, draw a draft payable to the party from whom purchased, attach thereto the compress company's receipt, and the bank would cash the draft, and hold the compress receipt. The Mineola State Bank and its predecessor, Mineola National Bank, would deliver to the compress company receipts covering the number of bales shipped out by the compress, and at the end of the cotton season it held a receipt for 30 bales, less 2 bales that had been credited on same, leaving 28 bales of cotton it had paid for, and for which the plaintiff never received anything and against which it holds the compress receipt. The following is a copy of the compress receipt held by plaintiff, and is a duplicate in form of all other receipts issued by said company: 'Citizens' Compress Company. No. 30. of Mineola. Mineola Texas 11/23, 1909. Received from Meeks Beard Cot. Co., for account of Jackson Bell and Company 30 B/C. This receipt must be returned before the cotton is shipped. James Gregory, Manager.' Indorsement on back of receipt: 'Two bales of loose cotton delivered on this receipt, balance due on same 28 bales, this March 31st, 1910. James Gregory.' Jackson Bell & Co. failed about January 1, 1910, at which time the compress had on hand 700 bales of cotton that had been paid for by plaintiff and defendant banks. When the first 400 bales of this 700 was about to be shipped by defendant bank, the plaintiff bank stopped the shipment until some adjustment could be made, and the defendant bank agreed with plaintiff that the cotton should be shipped, and each bank was to receive the proceeds of the cotton it had paid for, which was in the 700 bales. Under this agreement, the compress shipped out all of the cotton but 28 bales, and finally turned those 28 bales over to defendant bank upon its execution of an indemnity guaranteeing the compress company against any loss by reason of the claim of plaintiff bank. Of the 700 bales of cotton belonging to Jackson Bell & Co. plaintiff bank had paid for 191 bales, for which number it received pay for 163 bales. On November 23, 1909, Jackson Bell & Co. bought 65 bales of cotton from Meeks Beard Cotton Company, numbered 61701 to 61765, inclusive. This lot of cotton was paid for by both banks, plaintiff's predecessor paying $2,129.21 for 30 bales, and defendant bank $2,327.50 for 35 bales thereof. Of this lot of cotton there was at

the compress when Jackson & Co. failed 31 bales, numbered as follows: 61723–17–34–40–54–56–26–63–44–24–46–59–16–45–12–42–37–35–43–51–57–48–47–32–41–36–61–06–64–58. The above cotton was shipped by defendant bank, and it collected for it, $2,091.73; of this sum plaintiff bank's proportionate part was $998.60, which was not paid by defendant bank to plaintiff, and is entitled to recover said sum. On December 15, 1909, Jackson Bell & Co. purchased 40 bales of cotton numbered 61651 to 61690, inclusive, and delivered same to defendant compress company. Plaintiff bank paid the draft for all of same amounting to $2,448.15, and held compress receipt for the 40 bales. Of this lot of cotton there was on hand at the time of the failure of Jackson Bell & Co., and shipped out by defendant bank, collected for by it, and for which it did not account to plaintiff the following bales of cotton by number: 61676, 61664, which brought $157.81, and 61687, 61654, 61668, which brought $188.29, the aggregate, to wit, $346.10, is owing by defendant bank to plaintiff. On December 29, 1909, Jackson Bell & Co. bought 100 bales of cotton numbered 80551 to 80650, inclusive, delivered same to defendant compress company, and plaintiff bank paid for same the sum of $7,381.04, and held compress receipts for said bales. Of this lot of cotton there was on hand at the time Jackson Bell & Co. failed seven bales numbered 80644–36–43–40–39–37. Defendant bank shipped out and collected for this cotton $366.20, and did not account to plaintiff bank therefor, and is indebted to it in said sum. The aggregate amount of cotton in the 700 bales at the compress when Jackson Bell & Co. failed, and which was paid for by plaintiff bank and its predecessor, and which defendant bank sold and collected for, is $1,710.87, and under the agreement between plaintiff and defendant banks plaintiff bank is entitled to recover against defendant bank said sum.

"By the course of dealings between the banks and defendant compress company while Jackson Bell & Co. was a going concern, Jackson Bell & Co. would ship out a lot of cotton, and the compress company would go to the banks and take up receipts covering the number of bales shipped out, and the banks without knowing whether the lot of cotton shipped contained the exact cotton paid for by them, respectively, would deliver to the compress receipts covering that number of bales, and, if the receipts held by the bank did not correspond in number with the bales shipped, it would credit on the receipts the number of bales shipped and hold same for the balance due. Plaintiff bank was careful to always credit the compress with the number of bales shipped by it, and turned into the bank, and it would receive through Jackson Bell & Co., assignee, the value of the cotton thus shipped. The defendant bank was not so careful, and did not always deliver receipts to the compress or credit with the number of bales shipped, and at the end of the season held more receipts than it claimed against Jackson Bell & Co. The result of this course of business was that the plaintiff bank at the time of the failure of Jackson Bell & Co. held compress receipts for 191 bales of cotton, and was able through the books of Jackson Bell & Co. to trace into the compress the number of every bale of cotton it had paid for. After shipping out itself and receiving from defendant bank pay for 163 bales of cotton, and delivering to the compress receipts covering that number, it held receipts for 30 bales less a credit of 2 bales, leaving 28 bales unaccounted for. After the failure of Jackson Bell & Co., and after all the cotton had been shipped out but 28 bales, while the compress still had this number of bales of Jackson Bell cotton on hand, the plaintiff bank demanded of it that it deliver to it the 28 bales of cotton. Defendant compress refused to do this, but turned the cotton over to defendant bank, and took its bond of indemnity above referred to. After the failure of Jackson Bell & Co., the cotton then on hand at defendant's compress was not shipped out on the order of Jackson Bell & Co., but under the direction of the banks. The value of this last 28 bales of cotton was $1,572.91. I hold that the compress after the failure of Jackson Bell & Co., and while it still had the cotton on hand, and after notice from plaintiff bank that it held receipts for 28 bales of cotton, was bound to deliver same to the holder of its compress receipts (Stamford Compress Co. v. Farmers' & Merchants' National Bank [Sup.] 143 S. W. 1142), and it became liable to plaintiff bank for its value, to wit, $1,572.91, and is entitled to recover of defendant bank on its indemnity said sum, and judgment is ordered accordingly."

The objections to the trial court's findings and the principal questions raised by the several assignments of error presented by the appellants, respectively, will be sufficiently indicated by the opinion without stating and discussing them seriatim.

[1] The court did not err in rendering judgment in favor of the plaintiff against the defendant, First National Bank of Mineola, upon the theory that the pleadings of plaintiff alleged damages for conversion of personal property pledged, and the findings of the court were that the plaintiff should recover by reason of an agreement between the plaintiff and said defendant that the proceeds of certain cotton should be paid to the plaintiff. The findings and judgment of the court are warranted by the pleadings and the evidence. The defendant bank pleaded, as shown in our statement of the case, that the plaintiff and said bank by and through their officers duly qualified and appointed agreed to divide all of the cotton situated on the yards of the defendant the Citizens' Com-

press Company, so that each bank would receive the proceeds of the cotton paid for by them, respectively, and that said agreement was made in settlement and satisfaction of all claims against each other, etc., and that said agreement was acted upon and carried out by the defendant bank. In support of these allegations, R. J. Gaston, cashier of the defendant bank, testified on cross-examination as follows: "It was agreed between Edelin and me that each man was to take the cotton he had paid for, for Jackson-Bell Company, each bank was to get the cotton it had paid for. I don't know whether Merideth's testimony is correct about the bales of cotton he had paid for. I would not undertake to tell the court that plaintiff bank had not paid for the identical cotton Merideth testified about." It was entirely proper for the court, in ascertaining the issues involved in the suit and in rendering his judgment, to consider all the pleadings of the parties. Gregory v. Montgomery, 23 Tex. Civ. App. 68, 56 S. W. 231; Red River Nat. Bank v. De Berry, 47 Tex. Civ. App. 96, 105 S. W. 998. In the first case cited it is said: "It matters not what may be the technical character of this suit, whether a suit for conversion of bailed property, a suit for an accounting between parties, or a suit for money had and received, the facts alleged and proven are sufficient to entitle appellant to relief"—and in the last case cited the court says: "Appellees have expressly pleaded section 4623, above quoted, and thus made such statute available for appellants." Besides, if there was an agreement between the plaintiff and the defendant bank to divide the cotton so that each bank should receive pay for the cotton it had paid for, and the defendant bank sold and received the money for a part of the cotton paid for by the plaintiff and failed to account to plaintiff therefor, still said defendant would be guilty of conversion, and the presumption should be indulged that such was the trial court's conclusion, although not expressly stated.

Nor do we think the court erred in rendering judgment in favor of the plaintiff for $998.60, as its proportionate part of the 65 bales of cotton sold by the defendant bank, or in finding as a matter of fact that after the failure of Jackson Bell & Co. the cotton then on hand at defendant's compress was not shipped out on the order of Jackson Bell & Co., but under the direction of the banks. The evidence, without undertaking to detail it, was sufficient to authorize and sustain the court's conclusions in respect to both of those matters.

Neither did the court err in rendering judgment in favor of the plaintiff against the bank and the defendant compress company upon the theory as urged by appellants that the evidence introduced failed to show that the 28 bales of cotton represented by the compress receipts were not sold by the plaintiff and the proceeds thereof appropriated by it. The evidence justified the finding that plaintiff had not received this cotton or any money whatever derived from its sale. It appears, as we understand the evidence, that after Jackson Bell & Co. failed there was indorsed on the receipt issued by the compress company for the 28 bales of cotton the following: "Two bales of loose cotton delivered on this receipt. Balance due on same 28 bales, this March 31st, 1910. James Gregory." H. W. Merideth testified: "I never received any cotton on this receipt other than that noted on the back. Neither the Mineola National Bank nor the Mineola State Bank ever received any cotton on this receipt except as thus noted there on the back."

[2] There was no error in rendering judgment against the defendant the First National Bank of Mineola because the compress receipt did not describe the particular cotton it was executed to cover, and because the evidence did not show the particular bales of cotton covered by the receipt. The plaintiff, as argued by its council, sued the defendant bank for converting plaintiff's cotton after said defendant obtained possession of the same from the compress company, and sued the compress company as a warehouseman. In this attitude of the suit, if the proof warranted it, the plaintiff could recover against either or both of said parties, and the failure of the receipt to describe, or the evidence to show, the particular bales of cotton covered by it afforded no defense to the defendant bank. The bales of cotton received and appropriated by the defendant were shown, and this, it seems to us, was sufficient to make out, at least, a prima facie case against said defendant, and, if it should be conceded that no case was made against the compress company, that fact would not enable the defendant bank to escape liability. It was, however, the duty of the compress company, as a warehouseman, under the facts disclosed in this case, to keep and deliver to plaintiff its cotton when demand was made therefor. The evidence was sufficient to show the execution and delivery of the receipt in question, and that the compress company, with knowledge that plaintiff was the holder of it, delivered the 28 bales of cotton heretofore mentioned to the defendant bank, making itself secure in so doing by taking an indemnity bond. These and other facts shown were sufficient to establish plaintiff's case against the compress company.

[3, 4] The contention to the effect that the court erred in rendering judgment in favor of the plaintiff for interest at the rate of 6 per cent. per annum is not sustained. The mere failure of the trial court to state in his findings of fact that interest was allowed and the amount thereof will not preclude a recovery of such an amount of interest as the plaintiff is entitled to under the law and facts. The evidence was sufficient to show

the value of the cotton converted by the defendants, respectively, and the date and place of its conversion, and it is well settled that in suits of this character the measure of the plaintiff's damages is the value of the property converted with legal interest thereon from the date of conversion. That the court awarded and included in the judgments rendered an improper amount of interest is not claimed. The contention is that, not having incorporated in his conclusions of fact a specific finding in favor of the plaintiff for interest and the amount thereof, it was improper to include in the judgment entered any amount for interest; and, having done so, the judgment for that reason should be reversed. This contention is not in our opinion sound.

All assignments of error of both appellants have been carefully examined, and such of them as may not have been disposed of by what we have said point out no reversible error, and the judgment of the court below is in all things affirmed.