## TEXAS WAREHOUSE CO. v. IMPERIAL RICE CO.

(Court of Civil Appeals of Texas. El Paso. Feb. 12, 1914. Rehearing Denied March 12, 1914.)

**1. TRIAL (§ 251*)—INSTRUCTIONS—DAMAGES—PLEADING.**

Where, in conversion for the value of a rice mixer stored with defendant, there was no pleading to support a recovery of charges for rice stored with the machine, an assignment that the court erred in charging that defendant could not hold the mixer for other than the storage charges due on it was unsustainable.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

**2. TROVER AND CONVERSION (§ 67*)—PERSONAL PROPERTY—VALUE.**

Where there was evidence that a machine alleged to have been converted had a market value, the question of value should be submitted to the jury in the alternative, under an instruction that, if the jury believed that it had a market value, then plaintiff's measure of damages was the reasonable market value at the time and place of conversion with lawful interest; but, if the machine had no market value, then plaintiff's damage was its value to him.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 295–303; Dec. Dig. § 67.*]

**3. TROVER AND CONVERSION (§ 8*)—MACHINERY—USE AND STORAGE—DAMAGES.**

Where plaintiff stored a rice mixer with defendant under an agreement that the same might be used in storage, and claimed that defendant on demand refused plaintiff permission to use the plant, defendant converted the machine at the time of such refusal if plaintiff had not forfeited his right to use it by being in arrears for rent; but, if plaintiff had lost such right and afterwards tendered all moneys due for rents, then his loss of profits would begin at a later date, to wit, when the machine could have been moved and reset in another place.

[Ed. Note.—For other cases, see Trover and Conversion, Dec. Dig. § 8.*]

**4. TROVER AND CONVERSION (§ 41*)—PERSONAL PROPERTY—MACHINERY—DAMAGES—LOSS OF PROFITS.**

Where defendant converted a rice mixer by refusing to permit plaintiff to operate it in the warehouse when he was entitled to do so under the storage contract, plaintiff could recover such profits as may have been lost between the date of such conversion and the time another machine could reasonably have been installed in another place, of which loss notice had been given.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 245–247, 249–253, 258, 259; Dec. Dig. § 41.*]

**5. TROVER AND CONVERSION (§ 36*)—PERSONAL PROPERTY—LETTERS—NOTICE.**

In an action for conversion of a rice mixer, so much of a letter written by plaintiff to defendant as demanded possession of the machine and gave notice of possible damages, consisting of loss of profits which would flow from defendant's refusal to deliver, was admissible.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 217–224; Dec. Dig. § 36.*]

**6. EVIDENCE (§ 113*)—VALUE.**

Where, in trover for the conversion of a machine, whether it had a market value was for the jury, evidence as to the cost of the machine to plaintiff was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259-296; Dec. Dig. § 113.*]

**7. EVIDENCE (§ 113*)—MACHINERY—DAMAGES.**

In an action for conversion of a rice mixer, which had been taken down and placed in storage after two years' use, evidence as to the market value of the machine after two years' use taken down was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by the Imperial Rice Company against the Texas Warehouse Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood and Taliaferro & Taliaferro, all of Houston, for appellant. B. F. Louis and Dannenbaum & Taub, all of Houston, for appellee.

HARPER, C. J. This is a suit brought by the Imperial Rice Company, a partnership composed of Leo Hahn and T. F. Ryan, as plaintiff, against the Texas Warehouse Company and the Houston National Exchange Bank, as defendants. The suit is for the alleged conversion by the Texas Warehouse Company of a rice mixer, the property of the plaintiffs, and on which the Houston National Exchange Bank had a mortgage, together with damages for profits alleged by plaintiffs to have been lost by them on account of their inability to fill orders for rice by reason of such conversion. The Texas Warehouse Company set up a counterclaim for storage charges due it. The judgment was in favor of the plaintiffs and defendant bank against the Warehouse Company for $1,375 and in favor of defendant Texas Warehouse Company for $75. The Texas Warehouse Company, in due time, filed in the court below its motion for a new trial, in which was set up all the errors here complained of. The motion for a new trial was overruled. The appeal bond was filed in the time required by law, and the judgment of the lower court is now properly before this court for review.

[1] The first assignment of error follows: "The court erred in the paragraph of his charge numbered III, wherein it was stated to the jury, as the law of this case, that the warehouse company would not be authorized to exercise the right to hold the rice mixing plant for anything other than the storage charges due upon it, because there was sufficient evidence in the record from which the jury would have been justified in concluding that the arrangements for the storage of rice and the arrangement for storing the rice mixer were all parts of one and the same contract, entered into at the same time, and because there was evidence that at the date of the alleged conversion there was due the Warehouse Company charges on rice

that had been theretofore stored in the warehouse under the same contract under which the mixer was stored, and that such rice had been removed without the payment of the charges that had accrued thereon, and it was error therefore for the court to charge the jury that the Warehouse Company was not authorized to hold the mixing plant to secure the payment of any other charges except that which had accrued on the mixer itself. First Proposition. Where goods are stored with a warehouseman under one general contract of bailment, the warehouseman has a general lien on all such goods for any storage charges that may accrue on any part thereof, and in enforcing his lien he is not limited to the identical articles on which the charges he seeks to collect accrued. Under such circumstances, he may enforce a lien to satisfy any charges owing to him against any property he may have in hand, provided only that the contract under which such property was stored is the same as that under which the charges accrued."

There being no pleading to support a recovery of charges for rice stored with machine, the assignment is overruled.

The second and third assignments being to the same effect are disposed of by what is said above.

The facts leading up to this suit, and upon which the plaintiff relied for a recovery, are substantially as follows: In the year 1909, the Imperial Rice Company placed in the warehouse of the Texas Warehouse Company a rice mixing machine under an agreement to pay $15 per month for such time as same might remain in the warehouse. It remained in the warehouse and the rental was paid up to May 1, 1911, after which date no rents were paid. On August 28th, following, the Imperial Rice Company by letter demanded possession of the mixing plant, and tendered $75, three months' rent. The Warehouse Company refused to deliver possession, giving as their reason that the plaintiff had other articles stored with it, for which they had not paid storage.

The fourth assignment charges that the court erred in charging the jury that the measure of damages for the conversion is the reasonable value of the mixing plant at the time it was converted; the proposition being that the market value is the measure of damages for conversion, and, where there is any evidence that the article had a market value, the issue must be submitted to the jury.

[2] There is some evidence that the machine had a market value at the time of its alleged conversion, and the question of value should have been submitted to the jury in the alternative, that is, if, from the evidence, the jury found that there was a market value for the mixing plant, then the measure of plaintiff's damages was the reasonable market value of the property at the time and place of its conversion, with lawful interest.

If the jury should find that the machine had no market value, then the rule of damages is the value of the goods to the owner. City of Dallas v. Allen, 40 S. W. 324. And the rule as to the market value of secondhand goods is not what one might get for them from a secondhand dealer, but what it would cost a person to purchase such goods in the open market, if there was a market for such goods. Souther v. Hunt, 141 S. W. 361; Texarkana & Ft. S. Ry. Co. v. Neches Iron Works, 57 Tex. Civ. App. 249, 122 S. W. 64.

Appellee asserts as a counter proposition "that where it is shown by evidence that a machinery plant which is to be built from its component parts and installed to suit the particular location, as in this case, and has been used to such an extent as to become second hand, the law will presume, in the absence of evidence of a market value, that there is no market value therefor." The market value is the true rule, and it must first affirmatively be shown that there is no market value before evidence of reasonable value should be admitted from the evidence, or, if there is doubt about there being a market value, then it is a question for the jury to determine.

In the instant case there is positive evidence that the machinery of the mixing plant had a market value, and, if plaintiff's demand for possession had been acceded to, the machinery was all of any value that he would have been able to take possession of, and the value of this, as it would have been dismantled, and no more, is all he should recover for, if wrongfully converted.

[3] The fifth assignment charges that the trial court erred in paragraph 7 of its charge to the jury, which is as follows: "You are further charged in this case that, under the contract of storage between the plaintiffs, Imperial Rice Company, and the defendant Warehouse Company, that the Imperial Rice Company, through its employés, was entitled to access to their said mixing plant, and to the use of sufficient space to operate the same, and if you believe from the evidence that the defendant company, on the 29th day of September, 1911, refused permission to plaintiffs or their employés to use the said mixing plant and necessary space to operate the same, then you will consider whether or not plaintiffs sustained any loss or damage in the way of profits which they could have otherwise earned, if they had had the use of said mixing plant. And if, in this connection, you find that plaintiffs did lose profits as alleged, then you will assess said damages, if any, at the amount you may so find; if, on the other hand, you find from the evidence that plaintiffs were not denied access and use of said mixing plant, then your verdict, in this connection, will be for the defendent; or if you find that, although defendant may have refused such access and use to plaintiffs of said mixing plant, that no loss of profits was sustained by

plaintiffs, then your verdict will be for defendant upon this feature of the case"—the proposition being that "there was no evidence that such demand was made."

In view of another trial of this case, this assignment is sustained for the reason that the evidence in the record would not justify the court in submitting the question of recovery of damages for refusal of the use of the machine upon the premises of defendant under the circumstances detailed. If the plaintiff, at the time of demand for permission to use the plant in defendant's warehouse, had not forfeited his right to so use by being in arrears in his rents, and defendant refused to permit plaintiff to enter and use his machine, the conversion then took place, as to the machine, and his rights were as hereinafter indicated. But if plaintiff had lost his right to the use of the machine in the warehouse by failure to comply with lease contract, and afterwards tendered all the moneys due for rents, then his loss of profits would begin at a much later date, the time it would require to dismantle and move and reset the machine in another place.

The sixth and seventh assignments charge that the court erred in submitting to the jury the issue of damages for lost profits because there is no evidence in the record to support it: (a) Because the evidence showed no profits had been lost; (b) no notice was given defendant of the probable loss of special damages as required by law; (c) the profits sought to be recovered were too remote and speculative to enable plaintiff to recover.

There is evidence that notice was given to defendant that losses on contracts for rice would possibly occur if plaintiffs were denied access to the mixing plant, and also positive evidence of loss of profits, and such as were not too remote and uncertain to be the basis of recovery, if the rice mixing plant was wrongfully converted. Alamo Mills Co. v. Hercules Iron Works, 1 Tex. Civ. App. 683, 22 S. W. 1097; Walter Box Co. v. Blackburn et al., 157 S. W. 220.

[4] In other words, if the defendant wrongfully converted the rice mixing plant, by refusing to permit plaintiff to operate it in the warehouse when he was entitled to do so under his lease contract, the plaintiff would be entitled to recover such profits as may have been lost between the date of such conversion, and the date at which another machine could reasonably have been installed in another place, which are subject to definite proof by the plaintiff, and of which notice had been given.

[5] The ninth assignment complains of the admission in evidence of the following letter:

"We here now advise you, as has been done by us heretofore, that we must demand immediate possession of the sixty-two (62) pockets of rice, placed by us in your warehouse, receipts covering which we have heretofore delivered to you, with and upon the understanding and expectation, that when we so desired, we would be permitted to ship out the said rice called for thereby, the same representing a surplus as shown by receipts delivered to you, over rice delivered to us thereunder, with all of which you are fully conversant.

"We also desire to again remind you that under our contract of storage of our mixing plant with you, and the rental of part of your premises for such purpose, we are entitled to the reasonably necessary use of the premises in and about the mixing plant, now in your warehouse, for the purpose of mixing such rice as we may desire out of that stored by us with you, and as has been done by us in the past (up to the time of your recent refusal to permit us to enter the premises leased by us as stated).

"We tender you herewith, through our Mr. Dillon, all storage charges upon this rice desired to be mixed and removed by us, in the sum of $5.00, which covers such storage up to and including the 31st inst.

"We are mindful of the fact that you have heretofore refused permission to our Mr. Dillon to enter the premises where this rice and mixing plant is stored, but we give you this opportunity to reconsider your action relative thereto, as well as to the delivery of this rice to us, and in the event you fail or refuse to permit us, through our representative (as in the past) to enter and mix the above rice, or give us, or permit us to take immediate possession of such rice, that we will hold you for all the damages that may flow from or be occasioned to us by such unlawful conduct, and we advise you now, as heretofore, that this rice has been sold to various parties, at different prices, and it is necessary that we make delivery thereof without further delay upon our contracts of sale, and in the event you render it impossible for us so to do, we shall sustain, among other damage, the following: (1) Such claims as may be made upon us for breach of our contracts to so deliver such rice, which will be considerable; (2) the loss of profits to us upon such sales, in the sum of not less than $75.00; (3) further, such conduct on your part will injure and damage us in standing; in addition thereto, we advise you that we shall hold you responsible for conversion of such rice to your own use, to the full value thereof. Of all of which you will take notice and be governed thereby.

"We deliver this notice to your Mr. E. W. Fain in person, through our Mr. Dillon, so that there may be no question as to the receipt thereof, or notice of the facts contained herein.

"We wish to notify you further, that it is necessary for us to have access to the rice stored by us in your warehouse in order to protect it from, and to prevent, damage thereto."

The letter as a whole was not proper evidence, but those portions of it which demand

possession of plaintiff's property and those which give notice of possible damages to flow from the refusal so to do are admissible upon such issues.

[6] The tenth assignment complains that the court erred in permitting witness Leo Hahn to testify to the value of the mixing plant, what he paid for it, etc. Bearing in mind the discussion above of the rule as to the measure of damages, and the holding that it was a question for the jury to determine, whether there was in fact a market value for the mixing plant, this assignment is answered with the observation that if the record should show the same conflict upon another trial, as to there being a market value for the machine, this class of testimony would be admissible. For if it is a question for the jury to determine whether there was a market value, then evidence should be admitted on both phases of the rule.

[7] The eleventh assignment charges that the court erred in refusing to permit one Hayes, a witness for plaintiff, to testify to the market value of the mixing machine, after two years' use torn down. This assignment must be sustained for these questions and answers were directed to the true measure of damages in this case, and should have been admitted. Wright v. MacDonnell, 88 Tex. 141, 30 S. W. 907.

For the errors indicated, the cause must be reversed and remanded for new trial, and it is so ordered.