EARLY–FOSTER CO. v. MID–TEX OIL MILLS. (No. 5960.)

(Court of Civil Appeals of Texas. Austin. Nov. 27, 1918. On Motion for Rehearing, Jan. 22, 1919.)

1. EVIDENCE ⟜501(7)—VALUE—MEANS OF KNOWLEDGE.

Testimony, in a suit for conversion of cotton linters, as to how witness knew the market value of the linters at the time stated by him, was admissible.

2. TRIAL ⟜83(2)—INTRODUCTION OF TESTIMONY—OBJECTIONS.

Unless it appears from the nature of the question that its answer would be prejudicial, it is not reversible error to overrule an objection that the testimony is immaterial; such objection being too general.

3. APPEAL AND ERROR ⟜231(3)—RESERVATION OF OBJECTIONS—SUFFICIENCY.

An objection that testimony is immaterial, irrelevant, and incompetent is too general to form the basis of an assignment of error, unless it appears from the nature of the question that the answer will be prejudicial to appellant.

4. APPEAL AND ERROR ⟜1062(5)—HARMLESS ERROR—IMMATERIAL SPECIAL ISSUES—MEASURE OF DAMAGES.

Submission, in a suit for conversion, of a special issue forming an erroneous basis for fixing the measure of damages, is not reversible error, since the answer would be immaterial, and should be ignored.

5. APPEAL AND ERROR ⟜1062(5)—FUNDAMENTAL ERROR.

To base a judgment in a conversion suit on the highest market price of the property converted is fundamental error, if such market value is not the proper measure of damages.

6. PLEDGES ⟜36 — CONVERSION — MEASURE OF DAMAGES.

Where a bailee, holding cotton linters in trust for the owner as security, violates the trust by selling the property and placing it beyond the owner's reach, the measure of damages for conversion is the highest market price of

the property between the date of the conversion and the filing of suit.

**7. TROVER AND CONVERSION ☞44, 49 — MEASURE OF DAMAGES.**

Where conversion is not attended by fraud, willful wrong, or gross negligence, the measure of damages is the value of the property at the time of conversion with interest; but, where such circumstances are present and the property is of changing value, the measure is the highest market value between conversion and trial.

**8. PLEDGES ☞36—SALE AND CONVERSION— DAMAGES—INTEREST.**

Where a bailee of property, as security for money loaned, sold and converted it, interest could be allowed only upon the difference between the value of the property and the amount loaned, instead of upon the total value of the property.

Appeal from District Court, McLennan County.

Action by the Mid-Tex Oil Mills against the Early-Foster Company. Judgment for plaintiff, and defendant appeals. Reformed and affirmed, and rehearing denied.

Sanford & Harris, of Waco, for appellant.

Stribling & Stribling, of Waco, A. L. Curtis, of Belton, and Winbourn Pearce, of Temple, for appellee.

### Findings of Fact.

JENKINS, J. 1. On December 14, 1915, the appellant and appellee, each of which is a private corporation, entered into the following contract:

"Waco, Texas, 12/14/15.

"Mr. N. K. Smith, President Belton Oil Mills, Belton, Texas—Dear Sir: It is agreed between Early-Foster Company and Mr. N. K. Smith, president of Belton Oil Mills, Bartlett Oil Mills and Granger Oil Mills, that Early-Foster Company shall advance Belton Oil Mills, for 60 to 90 days at 8 per cent. interest, 5 cents per pound on 100 to 500 bales cotton linters, same to be shipped via Katy, flat, to Early-Foster Company, Waco, care Exporters' & Traders' Compress & Warehouse Company, from Belton, Bartlett or Granger.

"Belton Oil Mills shall pay the insurance charges on the linters; they however to be covered by our blanket policy at full value; and you shall pay any compress and storage charges on the linters.

"The linters shall be invoiced to us not as a sale, but on an advancement invoice. If they are sold for 5 cents per pound or more, the difference shall be paid to you, less the charges due on same, but if they are sold for less than 5 cents you shall pay us the difference, together with charges due.

"In order to avoid any bother, we will both sign this agreement; and will thank you to sign and return us the original.

"Yours very respectfully,
"Early-Foster Company,
"[Signed] W. M. Foster.
"Accepted:.........."

2. This suit was filed May 26, 1916, for the alleged conversion of 400 bales of linters shipped to appellant by appellee under said contract.

3. The case was submitted to a jury on special issues, as follows:

"First Question. Did the Early-Foster Company sell the 400 bales of cotton linters in controversy prior to the 24th day of February, 1916?

"The burden of proof is upon the plaintiff to prove the affirmative of this issue by a preponderance of the evidence.

"Second Question. Did plaintiff herein agree with the defendant Early-Foster Company that the said defendant could sell the linters delivered to it and at the maturity of the contract herein substitute other linters of like grade therefor?

"The burden of proof is upon the defendant to prove the affirmative of this issue by a preponderance of the evidence."

"Fifth Question. What was the highest market value of the linters in issue between February 24, 1916, and May 26, 1916?

"In answering this question you will state the aggregate amount in dollars and cents found as the value of said linters.

"Sixth Question. Did the defendant, in substituting other linters to plaintiff for and in lieu of plaintiff's linters sold by the defendant under a mutual mistake, deliver to plaintiff linters of a higher grade than those received by it from plaintiff?

"The burden of proof is upon the defendant to establish the affirmative of this issue by a preponderance of the evidence.

"If you answer the sixth question in the negative, you need not answer the seventh question. If you answer the sixth question in the affirmative, you will answer the seventh question.

"Seventh Question. What was the difference in the market value at the time of the redelivery of the linters previously received by defendant from plaintiff, and those substituted therefor?"

The jury answered said interrogatories as follows:

"Answer to First Question: Yes.
"Answer to Second Question: No.
"Answer to Fifth Question: 7½ cents. $15,976.12.
"Answer to Sixth Question: No.
"Answer to Seventh Question: ———"

Special issues 3 and 4, with the answers thereto, are omitted, as not being material to the issues involved on this appeal.

The evidence sustains these findings.

### Opinion.

[1] The first and second assignments of error complain of the action of the court in permitting the witnesses Smith and Claiborne to state how they knew the market value of linters at the times stated by them. This testimony was admissible. No objection was made to their stating the fact as to such values. In order to determine what weight should be given to their testimony, it was

---

proper to inform the jury as to their means of knowledge.

[2, 3] The only objection to this testimony was that it was immaterial. If this was true, unless it appeared from the nature of the question asked that its answer would be prejudicial to appellant, overruling such objection would not have constituted reversible error. Except under the circumstances stated, the objection that the testimony is immaterial, irrelevant, and incompetent is too general to form the basis of an assignment of error. Ry. Co. v. Smith, 50 Tex. Civ. App. 10, 108 S. W. 998; Sigafus v. Porter, 84 Fed. 435, 436, 28 C. C. A. 443; 1 Wigmore on Ev. p. 58.

In Sigafus v. Porter, supra, the court said:

"The stock objection 'incompetent, irrelevant, and immaterial' covers a multitude of sins. There is hardly an objectionable question but what can be classified under one or other of these heads. Sometimes the real * * * objection is so plain that the general phrase will be quite sufficient to indicate it; indeed, it may be quite apparent without any statement of the grounds of objection at all. But there are many other objections which rest upon some particular theory of the case, or upon some single fact in proof, which a judge may readily forget in the course of a long and intricate trial. It is only fair in such cases to require counsel to state clearly to the trial judge on what ground it is that they object. Certainly it is not fair to allow such a dragnet as 'incompetent, irrelevant, and immaterial' to be cast over every bit of evidence in the case which counsel would like to keep out, and then to permit counsel, upon careful analysis of the printed narrative of the trial, to formulate some specification of error not thought of at the time, and which, if seasonably called to the court's attention, might have been avoided or corrected."

The third assignment of error complains of the refusal of the court to permit appellant to prove that the expression, "60 to 90 days," meant, in the usage of the trade, that appellant had the right after the expiration of 60 days to demand of appellee additional security for the money advanced, if the market in the meantime had declined; and, in the event of the failure to furnish such security, to sell the linters and apply the proceeds, or so much thereof as was necessary, to the payment of the money advanced. If such be the fact, it was immaterial to any issue involved in this case, inasmuch as appellant sold the linters before the expiration of the 60 days, and without demanding additional margin.

[4] Appellant's fourth assignment is . as follows:

"The court erred in submitting to the jury special issue No. 5, as follows: 'Fifth Question. What was the highest market value of the linters in issue between February 24, 1916, and May 26, 1916?' Because said question submits to the jury an erroneous basis for the purpose of fixing the measure of damages."

The fact, if such be the fact, that the highest market price of the linters between February 24, 1916, and May 26, 1916, was not appellee's measure of damages, would not constitute the submission of such special issue reversible error. In such case the answer of the jury would be immaterial, and should be ignored by the court in rendering its judgment.

When a case is submitted on special issues, the submission of an immaterial issue is not reversible error. Krenz v. Strohmeir, 177 S. W. 181; Kelly v. Ward, 94 Tex. 292, 60 S. W. 311; Ins. Co. v. White, 177 S. W. 165; Petroleum Co. v. Dinwiddie, 182 S. W. 446.

[5] If, however, the market value at the dates submitted by the court was not the proper measure of damages, and the court based its judgment on the highest market price within those dates, and it so appears upon the face of the record, we think this would be fundamental error.

[6, 7] The judgment of the court was based on this finding. Was this error? We think not. Where the conversion is not attended with fraud, willful wrong, or gross negligence, the measure of damages is the value of the property converted at the time of such conversion, with legal interest thereon to the time of trial. But where the conversion takes place under either of these circumstances, and the property converted is of changing value, the measure of damages is the highest market value of such property between the date of conversion and the filing of the suit. Bayle v. Norris, 134 S. W. 773; Witliff v. Spreen, 51 Tex. Civ. App. 544, 112 S. W. 98; Ripy v. Less, 55 Tex. Civ. App. 492, 118 S. W. 1084; Ry. Co. v. Starr, 22 Tex. Civ. App. 353, 55 S. W. 395.

Thus, for the reason that, where one's property has been wrongfully taken by another, it does not thereby cease to be the property of the owner; and he may recover such property, if he can find it, even from an innocent purchaser for value, if it be not a negotiable instrument; or he may abandon his title to the same, and recover its value. In such case, the wrongdoer will not be entitled to the advantage of the fluctuation in value, but will be held to the highest value between the time of his wrongful taking and the filing of the suit, for the reason that he has deprived the owner of the opportunity of obtaining such price. The law will not allow a wrongdoer to speculate as to whether or not, but for his wrongful act, the owner would have sold on such highest market.

If this is true as to a conversion by a willful trespasser, as is held in the cases above cited, a fortiori it should be true where one has come into possession as bailee, and, while holding it in trust for the owner, violates such trust by selling the property, and placing it beyond the reach of the owner, as was done in the instant case. Appellee placed the linters in possession of appellant, and bor-

rowed money on them, because he wished to hold them for a higher market. When the market rose and it offered to pay appellant the money it had borrowed on the linters, it found that they had been sold and shipped out of the country. Damages are based on compensation. Field v. Munster, 11 Tex. Civ. App. 341, 32 S. W. 417 et seq., and authorities there cited; Muenster v. Field, 89 Tex. 103, 33 S. W. 852. Nothing less than the price which it could have obtained for its linters, but for their wrongful conversion, is compensation to appellee.

Appellant's fifth assignment is as follows:

"The court erred in rendering judgment herein for the $6,215.38 by reason of the fact that the said amount included $1,235.44 interest, when it should only have included $385.11 interest, the court having calculated interest on the whole amount of $15,976.12 from the 24th day of February, 1916, as found by the jury in answer to special issue No. 5, whereas, it should have calculated the interest from the 24th day of February 1916, on the difference between said $15,979.12 and $10,996.18, which plaintiff's pleadings and the uncontradicted evidence showed was the amount of advances made by defendant, Early-Foster Company, to plaintiff, including interest to March 12, 1916, the date of tender by plaintiff to this defendant, and other proper charges under the contract."

[8] We sustain this assignment. The theory upon which the trial court rendered judgment was that appellee was entitled to legal interest on the value of its property from the date the suit was filed to time of trial; that appellant was not entitled to interest on the money it had loaned appellee after a tender of same, which was made by appellee and refused by appellant. Either of these propositions, taken alone, is correct. But the fact remains that appellee, when it made the tender to appellant, had, and still has, the money which appellant advanced to it. Had appellant settled with appellee at that time, as it should have done, appellee would have received, not the value of the cotton converted, but that amount less the amount that it had borrowed from appellant. The difference between these sums was the amount of the damages it suffered by reason of the wrongful act of appellant in refusing to account for the value of the cotton; and its subsequent damage is such difference with legal interest thereon.

For the reason stated, the judgment of the trial court is here reformed so that appellee recover of appellant $5,361.05, with interest thereon from the date of the judgment at the rate of 6 per cent. per annum, instead of $6,215.38, as adjudged by the trial court.

As thus reformed, the judgment of the trial court is affirmed.

Reformed and affirmed.

### On Motion for Rehearing.

Appellant insists that the measure of damages for the conversion of property is the value of the property at the time of the conversion. We do not understand this to be the law where the property is of fluctuating value, and its conversion takes place, as it did in this case, under the circumstances stated in our opinion herein. Appellant cites in support of its contention, Moore v. Aldrich, 25 Tex. Supp. 276; Hatcher v. Pelham, 31 Tex. 202; Blum v. Merchant, 58 Tex. 400; Norwood v. Bank, 92 Tex. 268, 48 S. W. 3; Natl. Bnk. v. Mineola State Bnk., 155 S. W. 603; Warehouse Co. v. Rice Co., 164 S. W. 396; Bayle v. Norris, 134 S. W. 767; Bank v. Butler, 92 Ark. 472, 123 S. W. 657; Masterson v. Goodlett, 46 Tex. 402; Ry. Co. v. Campbell, 170 S. W. 859; Ry. Co. v. Fruit Co., 200 S. W. 420; Dimock v. Bank, 55 N. J. Law, 296, 25 Atl. 926, 39 Am. St. Rep. 643; Bank v. Boyce, 78 Ky. 42, 39 Am. Rep. 198; 3 Elliott on Contracts, §§ 729–731; Jones on Collateral Security (3d Ed.) § 574, p. 684; 22 Am. & Eng. Enc. of Law, 875; 31 Cyc. 845.

This is a formidable array of authorities, numerically considered; but an examination of them shows that they do not support appellant's contention. It should be borne in mind that the linters converted in the instant case were of fluctuating value, and were pledged by appellee in order that he might, by borrowing money thereon, be able to hold them for a higher market; that they were sold by appellant on a low market, before the debt for which they were pledged was due; that thereafter appellee, having no knowledge of such sale, tendered payment of the debt and demanded return of the linters.

None of the cases cited by appellant deal with the question of the fluctuating value of the property pledged, or present the issue as to the value of such property subsequent to its conversion as against its value at the time of such conversion, except the cases of Masterson v. Goodlett and Bayle v. Norris. In the former case the trial court instructed the jury that the measure of damages was the highest price from the time of the conversion to the time of the trial. The Supreme Court approved this as a general principle, but held that it was not applicable under the peculiar facts of that case. As to those facts, the court said that it might well be found that the defendant "was committing no wrong, but only doing what he might well have assumed the plaintiff wished him to do, as being for his best interest."

In Bayle v. Norris, the court held that if the timber was taken in good faith, under a belief of ownership, without culpable negligence, the measure of damages was its value at the time of the taking, but, if not so taken, the plaintiff was entitled to the value of the timber after it had been converted into lumber by the defendant.

In Moore v. Aldrich, there is nothing said in the opinion about the measure of damages. The syllabus is misleading in this regard.

In Hatcher v. Pelham, the case was reversed because the court instructed the jury that the measure of damages was the price at which the plaintiff instructed defendant to sell the cotton, without reference to its market value.

In Blum v. Merchant, the contention of appellant was that appellee should not be allowed the market value of the goods at the place where they were converted, which was all that plaintiff sued for, but only cost and carriage.

In Norwood v. Bank, the price of the lumber at the time of the trial was shown to be the same as when it was seized.

In Natl. Bank v. State Bank, the plaintiff asked only for the value at the time of the conversion.

In Warehouse Co. v. Rice Co., no issue as to fluctuating value was presented. The error assigned was that the court submitted the reasonable value instead of the market value.

In Bank v. Butler, suit was for the price of the scrip at the time of the conversion. The error was that the court made the highest price at which the scrip could have been sold "at the time of conversion" the measure of damages, instead of its market value at that time.

In Ry. Co. v. Campbell, the suit was for the market value at the time of the conversion. Plaintiff contended that the retail value was the market value.

In Ry. Co. v. Fruit Co., it was held that proof of the market value on August 22d would not support a judgment for conversion on August 24th; the fruit being of a perishable nature.

Bank v. Boyce deals only with the power of a factor to pledge goods.

Thus it will be seen that none of the cases above referred to support appellant's contention that the measure of damages, under the facts of the instant case, was the market value of the linters at the time of their conversion; it being shown that they were of fluctuating value.

The remaining case cited by appellant is Dimock v. Bank. In this case the court said that the measure of damages for conversion of securities of fluctuating value is not their market value at the time of the conversion. The opinion in this case quotes with approval from Galigher v. Jones, 129 U. S. 200, 9 Sup. Ct. 337, 32 L. Ed. 660, which states as follows:

"To allow merely their value at the time of conversion would, in most cases, afford a very inadequate remedy; and in the case of a broker, holding the stocks of his principal, it would afford no remedy at all."

The reference to Elliott on Contracts is an erroneous citation. The third volume does not contain sections 729–731, and sections 729–731, in volume 1, do not treat of the measure of damages.

Jones on Collateral Securities, § 514, does

say that "the value of the property at the date of the conversion is the criterion of damage"; but it further says that the date of the demand for the return of the securities is the, date of the conversion.

We quote from 22 Am. & Eng. Ency. of Law, p. 875, as follows:

"Where there is uncertainty or fluctuation attending the value, and the chattel rises in value after its conversion, the pledgor can be indemnified only by giving to him the amount of its value at the time he calls upon the pledgee to restore it."

We quote from 31 Cyc. 845, as follows:

"In cases where it is held that the pledgor must tender repayment of his debt before he is entitled to demand a return of the property, or maintain a suit for its conversion, it is held the measure of damage is the value of the property at the time such tender and demand is made, and not its value at the time of the conversion."

Thus it will be seen that neither the cases nor the text-books cited by appellant support its contention; but, on the contrary, in so far as they are in point, they are against such contention.

If we adopt the measure of damages adopted by the New Jersey court in Dimock v. Bank, supra, and also by the New York courts (see Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507; Id., 66 N. Y. 518, 23 Am. Rep. 80; Gruman v. Smith, 81 N. Y. 25; Colt v. Owens, 90 N. Y. 368; Wright, v. Bank, 110 N. Y. 238, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356), and also by the Supreme Court of the United States as to commercial securities (see Galigher v. Jones, supra), which is the highest market value between the time of the conversion and a reasonable time to replace the security after notice of sale; or if we adopt the test laid down in Am. & Eng. Enc. of Law, supra, or in Cyc. supra—in either event, the evidence is sufficient to sustain the judgment herein.

Appellee tendered payment and demanded the return of the linters on March 13, 1916, which was the day on which it discovered that they had been sold. N. K. Smith, appellee's manager, testified that the price of linters from March 12th to April 26, 1916, was 7½ cents per pound, which is the price upon which the judgment herein was based. The witness Claiborne testified that the price on March 20, 1916, was 7½ cents.

Appellant says that in some cases it has been held that the measure of damages is the value of the property at the time of the conversion; in others, the highest value between the time of the conversion and the time of trial; but that we have announced a new standard, viz. the highest price between the date of conversion and the filing of the suit. Appellee did not ask for the highest price to the time of the trial, and hence that was not an issue in this case. Where the property is

of fluctuating value, and has been taken without any claim of right, and the suit is seasonably brought, we thing that the standard which is announced herein is a just measure of damages.

Believing that our decision herein has correctly disposed of this case, the appellant's motion for a rehearing is overruled.

Motion overruled.